## MAGGIORE v. LAUNDRY & DRY CLEANING SERVICE, Inc.*
### No. 14484.

Court of Appeal of Louisiana. Orleans.
Oct. 30, 1933.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellant.

Robert H. Burton, Louise Louque Burton, and James J. Landry, all of New Orleans, for appellee.

JANVIER, Judge.

As plaintiff was about to back his automobile from his driveway into Dumaine street, he noticed that an unattended electric delivery truck of defendant was standing against the curb on the opposite side of the street. The street was so narrow that he could not back his car into it because of the presence of the truck.

After waiting for what he considered a reasonable time for the driver of the truck to return to it and to move it, he summoned a friend to assist him in pushing it backward a sufficient distance to afford him room to drive his own car into the street.

He took a position in front of the truck and the friend, Hirstius, placed himself at its side. They exerted sufficient energy to move the truck a few inches backward, when its motor commenced to operate in the opposite direction, and the truck moved forward. Plaintiff was unable to remove himself from in front of the on-coming truck and it crushed him against another automobile and then against a post. He received physical injuries for which he now seeks to recover from defendant $28,272.75.

He charges that defendant is liable because of the violation by its employee of certain statutory requirements contained in the then applicable traffic ordinance of the city of New Orleans, No. 7490, C. C. S.

*Rehearing denied November 27, 1933. Writ of certiorari denied January 2, 1934.

He bases his charges of negligence on the alleged violation of two provisions of the said ordinance. He asserts that the driver of the truck was negligent in leaving it in the street without first removing from it the key, or plug, which is an instrument by means of which the electrical current is turned off or on, and he maintains that, had this plug been entirely removed, there would have been no possibility of the premature starting of the truck, and he alleges that this negligent act on the part of the driver was a violation of section 14 of article III of the ordinance, which said section provides that: "No vehicle, motor propelled, shall be left standing at a curb unattended, unless the operator shall, in the case of a gasoline-driven vehicle, first shut off his motor, and in the case of an electrically driven vehicle, shall first lock the controller switch and withdraw the key."

The other provision which it is charged the driver violated is No. 9 of the same article III, paragraph (b) of which reads as follows: "No vehicle shall park so as to block ingress or egress of any driveway."

That the said key or plug was not removed by the driver when he stopped the vehicle is not denied. Nor is it in dispute that plaintiff's driveway was so blocked by the truck that it was impossible for his car to leave it and to emerge into the street.

Defendant's counsel, conceding that there were technical violations of the ordinance in the two particulars charged, nevertheless deny that defendant is liable to plaintiff and declare that the proximate cause of the accident was not the fact that the key was not withdrawn and was not the blocking of the said driveway, but was the intervening act of plaintiff himself and of his friend, Hirstius, in attempting to move the truck. This act on the part of plaintiff and his friend, defendant's counsel declare, was negligence and prevents recovery, even if the law violations to which we have alluded be held to show primary or initial negligence in defendant's employee.

■ There is in dispute only one important question of fact and that is, whether plaintiff and his friend, or either of them, entered the truck and manipulated any part of the control mechanism. Defendant's counsel assert that the evidence shows that there was no defect whatever in the starting or control mechanism of the truck and that it further shows that, unless there was such defect, it was beyond the realm of possibility that the motor of the truck could start merely as the result of the slight push given to the truck by plaintiff and his friend.

From this premise counsel for defendant argue that either plaintiff or his friend must necessarily have entered the truck and must have touched, or attempted to manipulate, one or more of the levers or pedals, because, they say, that, coupled with the testimony of the experts that the truck could not have moved unless there was something defective, is the evidence of employees of defendant that the truck had been practically rebuilt only three months before the accident and the further evidence that an examination made immediately afterwards showed no defect.

An expert who testified on behalf of plaintiff stated that if the control lever was worn, or if the spring intended to hold it in a neutral, or off position, did not operate properly, the said lever might, as the result of a jolt or movement of the truck, fall into either the forward or the backward position. Also opposed to the testimony of defendant's experts that the car could not start from a mere jolt, we have the direct, positive evidence of the two men who were most concerned, who were the only actual eyewitnesses, and who testified that they touched nothing except the outside of the truck when they attempted to push it backward.

Whether either of the said two men touched the starting levers or pedals is a question of fact which our brother below has decided adversely to defendant. We find, among the reasons given for judgment by the district judge, the following:

"It is impossible for me to discard the positive testimony of the plaintiff and his witness, Hirstius, as the defendant's counsel urges me to do, and decide the case against plaintiff, because three of his witnesses testifying as experts stated that unless the mechanism of the truck had been tampered with, the truck could not have acted in the manner in which it did act. The expert who testified on behalf of the plaintiff flatly contradicted the opinions of the three witnesses for the defendant.

"I am further convinced that the plaintiff and Hirstius have stated the facts correctly because there existed no reason for either of them to have touched the lever or switch. They did not desire to turn the current on; they had no intention of moving the truck under its own power. It is admitted that they were not in the truck, that they were standing on the ground, that they made no attempt to steer or guide the machine, which they necessarily would have done if they had intentionally turned the power on. The plaintiff was directly in front of the truck; no sane person would have taken such a dangerous position if he knew the truck could start under its own power."

We concede that modern machinery has almost reached perfection and that, if a modern machinery expert testifies that a modern machine can or cannot do a certain thing, under certain given circumstances, the

possibility of error on his part is remote. Nevertheless, remote though it may be, there is possibility of error, and on occasions apparently perfect machinery will do the unexpected, and therefore, in view of the decision reached below, which is not manifestly incorrect, we conclude that the machinery had not been tampered with and that the truck started as the result of the slight push given to it. We also conclude that it was in a defective condition.

The important facts are, then, that the driveway was blocked; the starting key was not withdrawn from the switch; and plaintiff and his friend had pushed the car only about six inches or one foot when the motor started and that the truck was defective.

We cannot avoid the conclusion that there was what may be called primary or initial negligence on the part of defendant's driver. Section 14, article III, of the traffic ordinance was inserted so that such accidents might be made practically impossible. The possibility of such unexpected dangers was in the contemplation of the framers of the ordinance. They realized that the mere application of the brake and the mere cutting off of power might render the possibility of such an accident very remote, but that, nevertheless, there would remain the possibility, so long as the starting key should remain in its place in the vehicle, and they, therefore, required that the key be withdrawn. It cannot be said that there was no causal connection between the fact that the key was left in place and the fact that later the motor started. A violation of a statute enacted for the safety of life or limb necessarily has the relationship of cause to effect where the final effect is such as could not have occurred had the statute not been violated. .

■ But the mere fact that defendant's employee was initially or primarily negligent and that that negligence was the first in a series of events which ultimately resulted in the accident, though there was relationship of cause and effect between the act and the accident, does not necessarily render defendant liable, for, even in such case there is no liability if the injured party was himself at fault and if, without his fault, there could have been no accident; or, if there is in the chain of events an independent act of negligence committed by a third party, which act was such as could not reasonably have been expected or anticipated by the person initially or primarily at fault, and without which intervening act the accident would not have occurred.

There can be no doubt that the final injury was traceable to the initial fault because it cannot be denied that, had the key been withdrawn, as the ordinance required, there would have been no injury. But that fact alone does not render defendant liable because, as the Supreme Court of the United States said in Atchison, Topeka & S. F. Ry. Co. v. Calhoun, 213 U. S. page 1, 29 S. Ct. 321, 323, 53 L. Ed. 671: "Where, in the sequence of events between the original default and the final mischief an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause."

If the act of Hirstius and Maggiore in pushing the car was such as no reasonably prudent person should have anticipated or expected, then it may well be said that this act would be termed "independent of" and "unrelated to" the primary act of defendant's employee, and would, in law, be considered the proximate cause, and the failure to withdraw the key only as the remote cause.

■■ It is a familiar doctrine that every one is justified in assuming that every one else will obey the laws. Maggiore and Hirstius, therefore, were not negligent in assuming that the truck had been properly safeguarded against a premature start. If it had been so safeguarded, no harm could possibly have resulted from pushing the truck a few feet backward. In the neighborhood in which they were traffic was most congested. We can see no reason why a person who finds his vehicle, which he has left, as it is now termed, "parked" against the curb, blocked by another near him, may not gently push that other car a foot or so to permit his own car to be extricated. It is well known that in the business section of this city and in other congested centers this is done on hundreds of occasions every day, and, in fact, has become such common practice that it may be said that any one who "parks" his car in such a district may expect it to be moved to accommodate the requirements of other motorists.

Counsel for defendant argues that in no driver does there exist the right to move another's car and that, where such a move may be necessary, the law should be resorted to and a policeman should be summoned. Of course, if, in moving the car of another, violence is used, liability for resulting damage no doubt ensues, but we are unwilling to declare as unlawful, or as negligence, the practice which has become so common and which is so necessary because the enormous number of cars which must be accommodated makes it imperative that they be parked very close together.

■ Maggiore and Hirstius were, therefore, in our opinion, doing what any reasonably prudent person might have done. Therefore they were not at fault. It follows that the proximate cause of the accident was not

their act, but was the original negligent act of the driver of the truck in parking a defective truck in a position prohibited by the ordinance and in failing to withdraw the key.

We have made a careful study of the many cases to which able and industrious counsel have called our attention and have satisfied ourselves that each case on which counsel for defendant rely can on its facts be distinguished from the case at bar.

In Castay v. Katz & Besthoff, 148 So. 76, we held the owner of a delivery truck was not liable for damage resulting when a thief stole the truck and, after driving it five and one-half blocks, allowed it to crash into another vehicle. We felt that the owner of the truck should not be held liable, although the driver had left it unattended and with the motor running.

Had the truck, without the unlawful, voluntary act of a third person, started of itself and injured some one nearby, we would, of course, have held that the act of the driver in leaving the truck with the motor running was the proximate cause, because that result should have been within the contemplation of any reasonably intelligent person. But it cannot be said that it is to be expected that a thief, or any other third party, will steal such an automobile and do damage with it.

The same may be said of Slater v. T. C. Baker Co., 261 Mass. 424, 158 N. E. 778, in which the court said: "In action to recover damages for injury sustained in collision with defendant's automobile driven by person stealing automobile, which was left unlocked with ratchet brake not fully set in violation of G. L. c. 90, § 7, larceny of automobile and its use by thief were intervening independent acts which defendant was not bound to anticipate and guard against, and hence verdict was properly directed for defendant, whose negligence in leaving automobile unlocked was not 'proximate cause' of injury."

In Kennedy v. Hedberg, 159 Minn. 76, 198 N. W. 302, an automobile owner was held not liable for damage which resulted when a friend, whom he had left in his car, attempted to operate it. The act of his friend was an intentional, intervening act of a third person and was not within the reasonable contemplation of the owner.

In Rhad v. Duquesne Light Co., 255 Pa. 409, 100 A. 262, 263, L. R. A. 1917D, 864, "the chauffeur left the car with the brake set. * * * It stood in that position until the boy [a third party] interfered with it. The boy testified that he put his hand on the brake, shoved it, and rattled it, and the automobile started to go." Very plainly, this was the intentional, intervening act of a third party, and was not such an act

as a reasonably prudent person should have contemplated.

In Moore v. Jefferson Distilling & Denaturing Co., 169 La. 1156, 126 So. 691, is found a case in which death resulted from the explosion of an alcohol drum when a match was held in the bunghole of the drum for the purpose of ascertaining whether the drum was empty. It was sought to hold the vendor of the drum liable on the ground that it was warranted to be new and to contain no alcohol deposit. Our Supreme Court held that the fact that the drum was not new and did contain an alcohol deposit was not the proximate cause of the death of Moore and that the act of the third party in holding a lighted match in the bunghole of the drum was not an act to be expected and that, therefore, no reasonably prudent person would have anticipated it. In other words it was the intentional, intervening act of a third party.

Defendant places great reliance on the case of Wright v. L. C. Powers & Sons, 238 Ky. 572, 38 S.W.(2d) 465, 466. There one of defendant's trucks had been left parked in plaintiff's driveway over night. The next morning plaintiff and his brother, in attempting to remove the truck from the driveway, tried to start the engine. Plaintiff turned the crank, the engine back-fired and broke his arm. The court held that the defendant was not liable and that the intervening act of plaintiff was not such an act as a reasonably prudent person would have anticipated. The court said: "The owner of a car who leaves it standing anywhere is not liable to another who comes along and undertakes to crank the car for purposes of his own."

We quite agree with that conclusion and we believe that it is not to be expected or anticipated that one person will attempt to start the engine of a car of another, but we think it is to be anticipated and expected that, if an automobile of another person is left parked in such a position as to block another's driveway, the person whose driveway is blocked will attempt to push the car a short distance to move it out of the way.

We do not see that any useful purpose will be served by the citation of the hundreds of authorities which may be found in the various jurisdictions. The rule, as we have said, is very simple of statement, though possibly difficult of application, and the sole question involved here, in our opinion, is whether or not Maggiore was guilty of negligence on his own part in attempting to push defendant's truck and we do not think that he was.

In Fiorentino v. Farr & Bailey Mfg. Co., 100 N. J. Law, 143, 125 A. 122, 123, is found a case in which an employee of defendant company had stopped his truck on a fer-

ry boat. Just before the boat landed the employee removed from the wheels of his truck a chock which had been placed against the wheel to make it certain that the truck would not move. Just after he removed the chock the driver of the car in the rear cranked his car while it was in gear, with the result that that car started forward and bumped into the truck, from the wheels of which the chock had been removed, knocking the said truck against plaintiff and squeezing him between the truck and the iron gates of the ferry boat. Defendant, owner of the truck from the wheels of which the chock had been removed, contended that there was no liability for the reason that the proximate cause of the accident was not the removal of the chock, but was the premature starting of the vehicle in the rear. The Court of Errors and Appeals of New Jersey said: "A man of ordinary prudence should have appreciated the dangers which might follow the removal of a block used for this purpose before the docking of the boat had been completed."

In other words, that it will not do to say that an intervening act is sufficient to exempt from liability for negligence a person who should have anticipated and guarded against the intervening act.

Suppose the truck in the instant case, instead of being parked so as to block plaintiff's driveway, had been stopped on a street car track and that the motorman and the conductor of the street car, the passage of which had been blocked by the truck, had attempted to push the truck out of the way, so that the street car might pass. Could it be said that their action in so doing would constitute negligence on their part and would bar their recovery in the event the truck should do what it did in this case and start unexpectedly, and, as the result of a slight push? We think that it could not be said that such motorman and conductor would be guilty of negligence. That is exactly what plaintiff did and we do not see how it can be held that he was guilty of negligence in so doing.

In the district court there was judgment in plaintiff's favor for $5,257.75. Of this amount $297.75 was allowed for medical attention, surgical appliances, etc.; $960 for loss of wages; $3,000 for permanent physical injury; and $1,000 for pain and suffering. The evidence shows that plaintiff was employed at $40 per week and that he lost in wages the sum awarded him. It also shows that the amount allowed for medical expenses and surgical appliances was actually expended by him. We find from the testimony, particularly that of Dr. Fenner, that plaintiff has sustained "a fracture of both bones of the leg at approximately the junction of the lower and middle third.

* * * Firm union had taken place between those bones, but they were not accurately reduced; the two ends, particularly of the main bone, the tibia, were lying out of line * * * and evidently had slipped along each other so as to produce a certain amount of shortening of the leg." Dr. Fenner further stated "where bones of the lower limb have been broken and are united not in a completely correct position, it not infrequently is the case that a sense of weakness and insecurity and a certain amount of pain upon exertion persists in such a limb for an indefinite period."

In view of these injuries we are well convinced that the amount awarded is not excessive.

We find in the record an answer to the appeal in which plaintiff asks that the amount awarded him be increased. We have given considerable thought to this request in view of the fact that the injuries sustained seem to us quite serious, but since the district judge saw the plaintiff himself, and, since the amount awarded is not palpably inadequate when compared with other awards made by our Supreme Court, we reach the conclusion that the judgment should not be disturbed.

The judgment appealed from is affirmed. Affirmed.