## HUNT v. CHISHOLM.
### No. 5537.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1938.

Rehearing Denied Aug. 5, 1938.

W. Decker Moore, of West Monroe, and Hudson, Potts, Bernstein & Snellings, of Monroe, for appellant.

James H. Trousdale, Jr., of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff, while riding a bicycle, was run into and injured by defendant's automobile, driven by his alleged employee, Mrs. Willie M. Faulkner, in the intersection of Pine and North Fifth Streets in the City of West Monroe. The accident occurred about 7:30 o'clock P. M., December 17, 1935. This suit was instituted by plaintiff against defendant and damages sought

from him on the theory that Mrs. Faulkner, at the time of the collision, was his agent and was on a mission for him, the duties of which fell within the scope of her employment. The specific negligence charged to said agent, relied upon for recovery, is disclosed from the following excerpt from his petition, viz.:

"That the sole cause of the aforementioned collision was the absence of lights from defendant's automobile which was being operated in total darkness with defendant's knowledge at the time of the collision; * * *"

Defendant admits ownership of the offending automobile and that Mrs. Faulkner was employed by him on a commission basis to solicit and gather up clothes to be cleaned and to deliver them back after being cleaned by defendant; and to this end, he provided her with an automobile while she furnished and paid for the gasoline to operate it. He specifically averred that Mrs. Faulkner's duties to him began at 8:00 o'clock A. M., and ended at 6:00 o'clock, P. M., daily, and therefore denies that when the accident occurred, she was performing for him any duty or was on a mission for him; but on the contrary, was on a private mission of her own, and was driving his car not only without his knowledge or permission, but in violation of his express instructions.

The contributory negligence of the plaintiff, though not pleaded in the alternative, is set up as a bar to recovery by him. The facts declared upon as a basis of this plea, are substantially these, viz.: That plaintiff was operating his bicycle without lights, in a careless and negligent manner, going at a rapid rate of speed, and did not stop, look or listen at the intersection before entering it, all contrary to the ordinances of said city. It is further averred that Pine Street, on which the automobile was traveling, is a right-of-way street under the laws of said City. It is apropos here to add that as neither vehicle had lights burning at the time of the accident, both were violating the law. Act 21 of 1932, Sec. 9, Subsec. (g) 6 and 7.

The case was tried upon the issues tendered by said pleadings and judgment was rendered in plaintiff's favor for $3,000.00. Defendant appealed. Increase in the award is here prayed for by plaintiff.

Defendant operates a dry cleaning business in the City of West Monroe. Mrs. Faulkner was employed by him to gather clothes from his patrons, bring them to the plant, and deliver them back, after being cleaned and pressed, and collect for the services. He furnished her with a car to perform her part of the contract. She provided, at her expense, the gasoline necessary to operate the car while thus employed. She had only been working for defendant for a few days. In support of his allegation of the non-agency of Mrs. Faulkner at the time of the accident, defendant testified substantially as follows, viz.: That her duties began daily at 8:00 o'clock, A. M., and terminated at 6:00 o'clock, P. M., and that at about six o'clock of the evening of the accident, Mrs. Faulkner made her final report to him for the day; that she requested permission to drive the car to her own apartment in said city and there store it for the night, as gasoline had been previously stolen from it while parked unprotected beside defendant's plant building; that her request was assented to with the distinct understanding that it would not be driven by her on any personal business. She agreed to this, and drove the car away. It was dark at the time. The evidence satisfies us that the car's lights were then burning brightly.

This version of facts is corroborated by the testimony of Mrs. Faulkner and that of defendant's wife. Mrs. Faulkner testified that while enroute to her apartment, she ran the car from the pavement on to the gravel and that the jar caused both lights to go out. She continued on in the darkness to her home and remained there for an hour. Her testimony on this point is corroborated by that of her landlady who lived in the same house. She further testified that she had an appointment with a beauty parlor in the southern end of the city between 7:30 and 8:00 o'clock that evening, and that she was destined for that place when the collision occurred. It was her intention, she says, to leave the car at a garage for attention to its lights, and walk on to the beauty parlor. Presumably, she purposed to drive the car back to her home on her return from the beauty parlor. There is no testimony in the record which, to any material extent, contradicts that given by Mrs. Faulkner. She, defendant and Mrs. Chisholm, testified that clothes were not gathered or delivered after 6:00 o'clock, P. M. One witness testified to the contrary, but her evidence does not favorably impress us. She stated that she saw defendant's car (the one used by

Mrs. Faulkner) frequently going over the city at a rapid rate, and without lights, after 6:00 o'clock of the evening, gathering and delivering clothes. If this were true, certainly more persons would have known of it than this witness; but no other person testified as did she. The traffic officers certainly would not allow a car without lights to habitually run freely over the city's streets at a rapid speed. It would seem to us a most unusual practice for a cleaner to solicit, gather up or deliver clothes after the hour of seven o'clock on a dark night in December; in fact, after that hour of any month.

Against the above discussed evidence on behalf of defendant, there are but a few isolated facts and circumstances stressed by plaintiff's counsel. Plaintiff's father and sister interviewed defendant after the accident and inquired of him what he was going to do about the damages resulting therefrom. The sister testified that defendant then stated that he wanted to "do the right thing" and expected the hospital, physician's and medical expenses to be kept as low as possible. She deduced from this that defendant "meant he was going to pay the expenses and the damages incurred." The father did not give evidence in the case. His failure to testify is not explained. Defendant denies positively the commitment testified to by the sister. He says that he did state to her that if he was legally responsible for the accident, that he would stand the damages, or words to that effect. After consulting counsel, he decided he was not responsible.

Defendant did not discharge Mrs. Faulkner for violating instructions and involving his car in an accident. This would have been the logical thing to do. The special reason for her retention is not disclosed. That was a matter that addressed itself to defendant alone. The failure to dispense with her services has no decisive bearing upon the issues of the case. The fact that the operator of the beauty parlor was not called as a witness for defendant is criticized. If she had been called and had testified in confirmation of the evidence of Mrs. Faulkner, as regards the appointment, it would have strengthened defendant's position. However, the name of the operator of the parlor and the street address of her place of business were given by Mrs. Faulkner and appear in the record. Plaintiff could have called her had he chosen to do so.

The pivotal question in the case is that of agency. Unless Mrs. Faulkner was on a mission for defendant, or was performing the duties of her employment to him, of course, defendant is immune from responsibility for her negligence. In a case of this character, the allegation and proof of defendant's ownership of the car and that its operator at the time of the accident was in his general employ, are sufficient to make out a prima facie case and raise the presumption that the employee was at the time acting within the scope of his employment. May v. Yellow Cab Co., 164 La. 920, 114 So. 836; Middleton v. Humble, La.App., 172 So. 542.

To escape the effect of such a prima facie case, it devolved upon defendant to adduce proof of sufficient probative weight to overcome it. It is our opinion that he has done this.

But plaintiff alternatively contends that even though his primary contention anent the question of agency be determined against him, that defendant is still responsible for the negligence of Mrs. Faulkner because it was to his interest and in his behalf that the lights of the car be repaired, and that in driving it towards a garage for this purpose, she was acting in the capacity of quasi agent. In other words, that her action was in furtherance of her master's business. We can conceive of cases wherein this position would be tenable, but not so under the state of facts of the present case. The car had reached the destination authorized by defendant when it arrived at Mrs. Faulkner's home. It should have remained there until daylight of the next morning when the lights could have been repaired. To use it during the night was in violation of the employer's orders. Mrs. Faulkner was not authorized to have any repairs made on the car excepting flat tires.

Thirdly, plaintiff contends "That plaintiff was injured by a defective dangerous instrumentality owned by defendant and which was being operated with his consent, express or implied." We find no merit in this contention. It is now well established in our jurisprudence that an automobile is not inherently a dangerous instrumentality. It may become dangerous through careless or incompetent operation. Of course, a car operated at night in a populous city without lights is a very dan-

gerous agency. But as defendant did not know of the illegal use being made of his car and did not know its lights were not burning, surely he cannot be held responsible for damages directly resulting from the car being operated under such conditions.

For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, and there is now judgment rejecting plaintiff's demand and dismissing his suit at his cost.

### On Rehearing.

DREW, Judge.

This case is before us on rehearing.

We have carefully studied the record again and are of the same opinion now, as is disclosed by our original opinion.

For that reason the former opinion of this court is reinstated and made the judgment of the court.