52 So.2d 573 (1951)
MIDKIFF et ux.
v.
WATKINS et al.
No. 3396.
Court of Appeal of Louisiana, First Circuit.
May 16, 1951.
Ralph H. Agate, Jr., Welsh, for appellants.
King, Anderson & Swift and Plauche & Plauche, all of Lake Charles, for appellees.
LOTTINGER, Judge.
This is a suit filed by Harry Floyd Midkiff and his wife, Bertha Mae Midkiff, against J. L. Watkins, Mrs. J. L. Watkins, and their daughter, Mrs. Hugh Doiron, for damages. Defendants filed exceptions of no cause or right of action, which were sustained by the lower court. Plaintiffs have taken this appeal. The facts herein are *574 not contested, the only issues presented are questions of law.
The facts show that on Sunday morning, March 12, 1950, Mrs. Watkins was driven by her daughter, Mrs. Doiron, to the Methodist Church in Welsh, Louisiana, in a car belonging to the community existing between Mr. and Mrs. Watkins. The car was properly parked near the church, and was left unattended with the motor turned off, but with the keys in the ignition switch. After some period of time, while Mrs. Watkins, and her daughter were still in church, Archie Wilson, an alleged incompetent and mentally deficient negro seventeen years of age, stole the Watkins car from its position near the church and drove away in it at a rapid rate of speed. After traveling a short distance, Wilson, in attempting to negotiate a corner, ran into a car belonging to plaintiffs, killing Henry Floyd Midkiff, Jr., the minor son of plaintiffs, and damaging plaintiffs' property. There was no negligence whatsoever on the part of plaintiffs nor their deceased son.
Plaintiffs allege that an automobile is, per se, a dangerous instrumentality. They further claim that the act of Mrs. Doiron, in leaving the key in the ignition switch was such an act of negligence as to invite theft of the automobile; that the resulting theft and damages were foreseeable; and that the said act of negligence was the proximate cause of the damages to plaintiffs' property and the death of their child. Plaintiffs further contend that an automobile is an attractive nuisance and that such fact, coupled with the mental deficiency of Wilson, would render defendants liable under the doctrine of attractive nuisance. Plaintiffs trace the negligence of Mrs. Doiron to Mrs. Watkins under the doctrine of concurring negligence. The negligence is further traced to Mr. Watkins under the principal-agent relationship, plaintiffs alleging that Mrs. Doiron and Mrs. Watkins were agents of the community existing between Mr. and Mrs. Watkins, of which community Mr. Watkins was head and master. From judgment sustaining the exceptions in the lower court, the plaintiffs have executed this appeal.
In support of their contention that the act of Mrs. Doiron in leaving the keys in the ignition switch was negligence which was the proximate cause of the resulting damages, plaintiffs have relied principally upon Castay v. Katz & Besthoff, Ltd., La. App., 148 So. 76; Maggiore v. Laundry & Dry Cleaning Service, Inc., La. App., 150 So. 394; Ostergard v. Frisch, 333 Ill.App. 359, 77 N.E.2d 537; Ross v. Hartman, 78 U.S.App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370; and Weiss et al. v. King et al., La. App., 151 So. 681.
Castay v. Katz & Besthoff, Ltd., supra, involved a suit for damages for physical injuries resulting from an accident between two trucks. The defendant's truck was stopped with the motor running while the driver crossed the street to deliver a package of medicine to a customer of defendant. Upon returning from making said delivery, defendant's driver saw the truck speedily moving down the street. Defendant's driver claimed that he heard the gears shift in the truck, however, he did not see anyone driving the truck. After traveling some five city blocks, defendant's truck ran into plaintiff's truck causing damages. There was some question as to whether the defendant's truck had been stolen, or whether it had driven off on its own accord because of mechanical defect. The court, considering the shifting of the gears and the distance it proceeded along the street, concluded that the truck had been stolen. The Orleans Court of Appeal, in refusing recovery for plaintiff, said: "The theft of defendant's motortruck and the negligent injury of plaintiff by the thief was, we believe, a consequence too remote to have been reasonably within the contemplation of defendant's driver when leaving the parked truck with the motor running, and the intervening act of the thief was sufficient to break the sequence of defendant's negligence so as to establish the intervening cause as the efficient one proximately causing the accident." [148 So. 78.]
In Maggiore v. Laundry & Dry Cleaning Service, Inc., supra, the suit was for damages for personal injuries to plaintiff. In *575 that case, the driver had improperly parked an electric truck in a driveway, and left the truck with the electric key or plug engaged. There were city ordinances prohibiting parking in a driveway, and leaving an electric vehicle parked without first locking the controller switch and withdrawing the key. Plaintiff was unable to back his car from the opposite driveway because the street was narrow and the electric truck served as an obstruction. He therefore summoned a friend to aid him in pushing the electric truck backward so as to clear the path. Plaintiff stationed himself in front of the vehicle and pushed backward. After pushing the truck a few inches, its motor started and the truck began to operate forward. Plaintiff was unable to get out of the way, and the truck crushed him against an automobile and then against a pole, causing the injuries upon which the suit was based. The court held the proximate cause of the injuries to be the improper parking of the electric truck, and the negligence of the driver in not removing the key or plug, both of which acts were in violation of ordinances. There was no negligence, or intervening cause, found on the part of the plaintiff, nor his friend. The Orleans Court of Appeal, in deciding this said case, said:
"There can be no doubt that the final injury was traceable to the initial fault because it cannot be denied that, had the key been withdrawn, as the ordinance required, there would have been no injury. But that fact alone does not render defendant liable because, as the Supreme Court of the United States said in Atchison, Topeka & S. F. Ry. Co. v. Calhoun, 213 U.S. page 1, 29 S.Ct. 321, 323, 53 L.Ed. 671: "Where, in the sequence of events between the original default and the final mischief an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause."
"If the act of Hirstius and Maggiore in pushing the car was such as no reasonably prudent person should have anticipated or expected, then it may well be said that this act would be termed `independent of and `unrelated to' the primary act of defendant's employee, and would, in law, be considered the proximate cause, and the failure to withdraw the key only as the remote cause. * * *
"* * * it is not to be expected or anticipated that one person will attempt to start the engine of a car of another, but we think it is to be anticipated and expected that, if an automobile of another person is left parked in such a position as to block another's driveway, the person whose driveway is blocked will attempt to push the car a short distance to move it out of the way." [150 So. 396.]
The cases of Ostergard v. Frisch, supra, and Ross v. Hartman, supra, were both decided by out of state courts. In each of said cases, the owner of a motor vehicle was held liable for damages resulting when an unauthorized person stole said vehicles and, in driving off, caused damage. In each of said cases there were laws prohibiting a person from leaving an unlocked vehicle in a public place, and the defendants had violated said laws. In these cases the courts held defendants negligent because they had violated a law, and held such negligence a proximate cause of the damages caused by the thieves.
In each of the cases discussed above holding the owner of the vehicle liable, negligence of the owner was founded on the violation of a law. In Castay v. Katz & Besthoff, the sole above described case in which the owner of the vehicle, or his agent, did not violate an ordinance, or law, the owner of the vehicle was held free from liability.
In the case of Weiss et al. v. King et al., supra, this was a case decided by our learned brothers of the Second Circuit, wherein the defendant King, an employee of the City of Alexandria, while on the business of the City, parked his car parallel with the curb, facing west on the south side of Murray Street, so near its intersection with Second Street, that there was not sufficient room for another car to park properly between his car and a depressed drain leading into a sewer at the corner. While King was in the City Hall Building, B. J. Carbo, desiring to stop for only a few minutes, *576 crowded his car into the space between King's car and the drain so that its front was almost against that of King's car, with its back out from the curb in such a position that the car pointed backwards diagonally across the street intersection. The court in that instance found that Carbo attempted to cut off the ignition and lock the switch, however, he failed to push in the spring lock far enough to click and withdrew the key without locking the switch. The court further found that the Carbo car was left in reverse gear. The court in commenting on this state of facts said, "It was like a gun loaded and cocked, ready to go off." [151 So. 681.] King came from the City Hall in response to a call in line of duty and found his car was jammed in, that it was impossible to get out without moving the Carbo car to some degree. He accordingly started his car forward intending to push the blocking car far enough to allow him to get out and as his car came in contact and moved the Carbo automobile, the Carbo motor started and it proceeded slowly across the intersection under its own power and demolished a plate glass in a building owned by plaintiff and situated across the corner from where the car was parked. Weiss, the plaintiff, brought this suit to recover of King and the City, the cost of repairing this damage. The court rejected the demands of the plaintiff and stated that, "Though we have no doubt that Carbo believes that he locked the switch and left the gears in neutral, we are convinced by the testimony and the physical facts that he neglected to do so, and that the proximate cause of the accident was his negligence in crowding his car into the insufficient space and leaving it in such a condition that a moderate push would start it in motion under its own power." The court in that instance discussed at great length and quoted therefrom, the case of Maggiore v. Laundry and Dry Cleaning Service, supra. The court in that instance did not find the defendant King as being negligent or any act of his as an intervening cause and for that reason, attributed the proximate cause of the accident to the negligence of Carbo. Certainly that case is distinguishable from the case at bar.
Here there was no city or state law condemning defendants for leaving the car unattended with the key in the ignition switch. However, plaintiff has attempted to show violation of law on the part of defendants under the provisions of Act No. 286 of 1938 LSA-RS 32:1 et seq. We believe, however, that plaintiff has utterly failed in this attempt. Nowhere in said act is there any provision which was violated by defendant herein. Furthermore, we have found no case which has held a person liable solely on the ground that the keys were left in the ignition switch. We conclude, therefore, that the leaving of the key in the ignition switch did not violate any law of this jurisdiction, and that said act, of itself, did not constitute negligence on the part of defendants.
Assuming for the sake of argument that the leaving of the key in the ignition switch did constitute negligence on the part of the defendants, we are still inclined to believe that under the circumstances in the instant case, that the intervening act of Wilson was sufficient to break the sequence of defendants' negligence so as to establish the intervening cause as the efficient or proximate cause of the accident. We think the test of proximate cause is whether the facts constitute a continuous succession of events so linked together that they become a natural whole or whether the chain of events is so broken that they become independent, and the final result is not the natural and probable consequences of the primary cause. Under the facts as related in this case, we are convinced that there was an intervening cause which broke the sequence of defendant's alleged negligence, if any. To hold the defendants liable in this case would go far towards making them insurers as to the consequences of every accident in which their car might become involved while operated by thieves or their successors in possession.
The plaintiff attempts to use the doctrines of attractive nuisance and foreseeability in imposing liability upon defendants. 38 American Jurisprudence, Section 149 on Negligence, in discussing the attractive nuisance doctrine, says: "The fact that a *577 thing is attractive to children is not of itself a ground for invoking the attractive nuisance doctrine. Clearly, not everything which may possibly excite the curiosity of a child amounts to an attractive nuisance. If everything containing some element of danger to a boy, of which a plaything possibly can be made by him, amounts to an attractive nuisance, there is almost no limit to the application of the doctrine. In order to invoke liability under the attractive nuisance doctrine, it must be shown that the instrumentality or condition relied upon to constitute the attraction was a sufficient allurement as likely to attract children upon the premises, and that the instrumentality or condition was fraught with such danger to young children as reasonably to require that precautions be taken to prevent children from coming in conflict therewith. The tendency of the courts is to exculde from the application of the attractive nuisance doctrine things not in their nature dangerous or peculiarly alluring or attractive to children, natural conditions, common or ordinary objects such as walls, fences, and gates, simple tools and appliances, and conditions arising from the ordinary conduct of a business. The same degree of care cannot be expected in the case of an article unattractive in itself, not inherently dangerous, and which is in such common use that people generally keep it about their premises and are familiar with it, as in the case of an article attractive in itself, or inherently dangerous, or so uncommon that people, generally, neither have nor use it. Again, it is said that an attraction must be special, unusual, uncommon, or artificial, in order to come within the attractive nuisance doctrine. It is apparent, however, that none of these so-called requirements is an absolute test. There are circumstances in addition to the character of the instrument, such as its location, and the age and intelligence of the child, which must be considered in particular cases."
We quote from 65 C.J.S., Negligence, § 29 (3), at page 460, as follows:
"The attractive nuisance doctrine applies only to property, conditions, appliances, or instrumentalities which are per se of a dangerous character with respect to children of tender age, or are of such character that children of tender age can create danger to themselves out of them, so that they are likely to or probably will result in injury to children who are attracted to them.
"In order to render the doctrine applicable, the situation or characteristics of the instrumentality or condition must be such as to impose on the owner a duty of reasonably anticipating injury to children if it remains unguarded, and, where there is nothing to indicate any probability of danger, the owner or person in charge is not liable for failure to use or provide safeguards. It is not sufficient that the instrumentality or condition may be a source of danger to children, but it must be of such a nature that danger to children is reasonably to be apprehended, and, in the absence of anything which indicates or should indicate to the owner or person in charge a reasonable likelihood of danger, the doctrine does not apply."
And again in 65 C.J.S., Negligence, § 29 (4), page 462,
"Not every instrumentality attractive to children constitutes an attractive nuisance, under the attractive nuisance doctrine. A statement that any agency which is dangerous and attractive to children may constitute an attractive nuisance is entirely too broad, and leads to absurdities, since there is practically no limit to what may attract children. It is manifest that many things ordinarily in existence and use throughout the country are both attractive and dangerous to children, and to hold that such things amount to an implied invitation to enter would be contrary to reason, would lead to vexatious and oppressive litigation, and impose on property owners such a burden of vigilance and care as would materially impair the value of property and seriously cripple the business of the country.
"Accordingly, it is usually considered that in order that the attractive nuisance doctrine may properly be applicable, the condition or appliance must be something unusual and which is of a nature rendering it peculiarly or unusually attractive or alluring to children. It is also necessary to the application of the doctrine that the *578 danger of alluring children should be so obvious that a due regard for the safety of children would suggest to a man of ordinary prudence the necessity of taking precautions for their protection."
These sections are quoted with approval in the case of Peters v. Town of Ruston, La.App., 167 So. 491.
We further find in 65 C.J.S., Negligence, § 29 (14), at page 479, the following: "Even in jurisdictions where the attractive nuisance doctrine has been accepted, the tendency is to limit rather than to extend it, and the doctrine is said to be one which should be applied very cautiously and only when the facts come strictly and fully within the rule."
In this day and age, we are not of the opinion that an automobile properly parked on a public street, with the keys in the ignition switch, would be so peculiarly alluring to children as to constitute an attractive nuisance. Furthermore, the courts of this state have held that an automobile is not per se a dangerous instrumentality. Hunt v. Chisholm, La.App., 183 So. 132; Bailey v. Simon, La.App., 199 So. 185.
"Ordinarily, an owner who lends his automobile to another for latter's convenience is not responsible to third persons for injuries received by them as result of negligent operation of automobile by the borrower because borrower is not the "agent" of the owner and because an automobile is not a "dangerous instrumentality" per se such as ferocious animals, locomotives, gunpowder, dynamite or other dangerous machines or agencies."
"An automobile may become a "dangerous instrumentality" where owner permits it to be driven in a defective condition so that it cannot be controlled when it is in operation or where he allows it to be operated by persons who do not know how to drive, by insane persons or by persons who are similarly incompetent by reason of temporary or permanent defects in their mental or physical faculties, and in such cases where it appears that owner has intrusted automobile to an incompetent person with full knowledge of borrower's inability, owner may render himself responsible to another who is injured by carelessness of the borrower." Bailey v. Simon, supra.
The automobile today is a very common machine. Thousands are seen daily on the streets of our cities. Even in rural communities they are so common as to excite no curiosity in the adventure seeker. We cannot agree with the contention of plaintiffs that the mere fact that the key was left in the ignition switch afforded such inducement to a child, or a mentally deficient person, as to allure him into entering the car and driving off in same. The doctrine applies to children of such tender age, or persons of such mental incompetence, as to be unwary of danger, and the party leaving the danger unattended must foresee the possibility of such a child, or incompetent, entering the object and causing injury. Certainly we cannot say that the defendants in this case were aware of the fact that Wilson would enter their car and drive off in same. A person, such as Wilson, in entering the car, starting the motor, and driving off in same must have been of such intelligence as to know what he was doing. This thought is strengthened by the fact that he successfully traversed some distance, and the accident, and resulting damage, did not occur until he attempted to negotiate a turn at a great rate of speed.
In Maggiore v. Laundry & Dry Cleaning Service, La.App., 150 So. 394, 396 the court said: "It is a familiar doctrine that every one is justified in assuming that every one else will obey the laws." Certainly we could not hold that the defendants could reasonably foresee that their car would be stolen. It is an everyday occurrence, especially in small communities, to park a car with the keys left in the ignition switch. Although we firmly believe that, for the owner's protection, it is a good practice to remove the keys from a parked car, his failure to do so would not constitute negligence so as to render him liable for damages committed to a third party by a thief in stealing his automobile. In Castay v. Katz & Besthoff, supra, where the theft occurred in the City of New Orleans, the court refused to hold the owner *579 of the stolen vehicle liable. It is a well known fact that the crime of theft of an automobile is more likely to occur in larger urban communities than in rural communities. Furthermore, the crime in that case, occurred during Mardi Gras, which is a period fraught with crime and mischief.
Anderson v. Theisen, 231 Minn. 369, 43 N.W.2d 272, 273, recently decided by the Supreme Court of Minnesota, was similar to the present case. There, the owner of an automobile left same unlocked with the keys in the ignition switch and the motor running. An ordinance provided that "Every person parking a passenger automobile on any public street or alley in the City shall lock the ignition, remove the key and take the same with him." The car was stolen, and the owner was sued for damages caused by the thieves in making their getaway. The court, citing Castay v. Katz & Besthoff, said: "* * * we are of the opinion that the negligent driving of the thieves was the proximate cause of decedent's death and that the negligence of defendant, if any, was too remote in the eyes of the law to be regarded as connected as cause therewith. The weight of authority is to that effect."
In Saracco v. Lyttle, 11 N.J.Super. 254, 78 A.2d 288, 289, a recent New Jersey case, defendant parked his car, unlocked and with the key in the ignition switch, on a public street in a residential area. No statute or ordinance condemning such action by a car owner was present. The car was stolen by one Padula and damage was caused in making the getaway. The court said: "* * * it was not reasonably to be anticipated that an intermeddler would not only drive the car away but also would later negligently operate it. * * * Responsibility for an accident cannot attach to one unless his act or failure to act was the proximate cause of the injury. The proximate cause of the collision was the unskillful handling of the car by Padula. The negligence of the intermeddler, in driving into the vehicle of plaintiff, was an intervening efficient cause interrupting the chain of causation between defendant Lytell's act in leaving his key in the ignition switch (whether or not such act in itself constitutes negligence) and the damage to the plaintiff."
The accident here was an extremely unfortunate one. It resulted in the death of a child. However, there was no negligence on the part of defendants which would make them liable in damages. The sole and proximate cause of the accident was the negligence of the chief, Wilson, in his unskillful and reckless driving of the stolen vehicle. Such actions are punishable under the criminal statutes of this state. Defendants herein were free of negligence and cannot be held for damages. The exceptions of no cause or right of action were properly sustained by the lower court.
Judgment affirmed at cost of appellant.