Arnold Moran, Jr., Minor, by His Next Friend and Father, Arnold Moran, Appellee, v. The Borden Company, Appellant.

Gen. No. 41,487.

Opinion filed March 31, 1941.

PHILIP S. CAMPBELL, of Chicago, for appellant.

EARL J. WALKER, of Chicago, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendant to recover for personal injuries for the claimed negligence of defendant occasioned by defendant leaving one of its electric delivery trucks standing in an alley unattended and without removing the key, in violation of par. 189, § 92, ch. 95½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 85.221]. There was a verdict and judgment in plaintiff's favor for $5,000 and defendant appeals.

The record discloses Walter Jacklin was employed by defendant delivering milk and other dairy products in a residential section of Oak Park. He had been employed by defendant for about 9 years. In performing his work he drove one of defendant's electric trucks. The territory he served was about half a mile square between Harrison street on the north, Roosevelt road on the south, Austin avenue on the east, and Ridgeland avenue on the west.

September 3, 1937, he completed his route about 1 P. M. his last stop being at Ridgeland avenue and Roosevelt road which was the southwest corner of his territory. Defendant's West Surburban plant, out of which Jacklin operated and to which he was to return, was located at 7301 Harrison street, Forest Park, Illinois, about a mile west of the northwest corner of Jacklin's territory. The shortest route to return from the last delivery made by Jacklin to the plant would be to travel west on Roosevelt road to Harlem avenue which is 7200 west, then north some 5 or 6 blocks to Harrison street and then 2 blocks west to the plant. Jacklin did not return to the plant after he made his last delivery but went home for lunch. He lived at 1309 S. Clarence avenue, Berwyn, a distance of 5 or 6 blocks southwest from the place of his last delivery. He drove the truck in the alley and stopped it in the rear of his home facing south; he did not remove the plug or key from the truck. At the time he stopped the truck his two sons, Leroy, 15, and John, 11, were

in the alley. Jacklin went into his home and waited for his wife to prepare lunch. He sat down and was about ready to make out a report of the business he had done that day. The boys were in the yard behind the house. He asked Leroy to go out to the truck and get his route book. After Leroy went to the truck, John came into the house and asked for some chocolate milk and Jacklin told him to go to the truck and get a bottle of it. When John got to the truck Leroy was on the running board, he had the route book in his hand. While John was in the truck, plaintiff, a neighbor boy who lived at 1325 S. Clarence avenue, rode north in the alley on his bicycle on the east side of the truck. John got the chocolate milk and the two Jacklin boys began to move various controls on the truck to see which operated the lights; John pressed a button and the horn blew. The boys asked plaintiff to look to see if the lights went on; he first went to the front of the truck, then to the rear on his bicycle and was about two feet back of the truck to see if the rear lights went on. About that time John pressed a button "located in a rib in the roof of the truck. Nothing happened." He then pressed simultaneously both buttons in the roof and as he did so the truck started in reverse, backed up, struck plaintiff and injured him severely.

After the accident, on the same day, Walter Jacklin was discharged by the defendant company.

Par. 189, § 92, ch. 95½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 85.221], provides: "No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition and removing the key." The key mentioned in the statute is an instrument by means of which the electric current is turned on or off. When it is removed there is no possibility of the power being applied so as to move the truck. It is undisputed that the key or plug was not removed by Jacklin when he stopped the truck in the alley and went into his home.

Defendant contends it is not liable because, (1) the failure to remove the key from the truck was not the proximate cause of plaintiff's injuries, (2) Jacklin was acting outside of the scope of his employment, and (3) plaintiff was guilty of contributory negligence.

(1) Defendant contends the "immediate cause of the accident was the tampering with the controls of a truck by two boys who had been sent to the truck by their father" and not the failure of the father to remove the key or plug when he stopped the truck in the alley; that the violation of the statute by defendant's employee Jacklin in his failure to remove the key as required by the statute merely furnished a condition by which the injury was made possible by the subsequent act of third persons and therefore defendant was not liable, citing *Seith v. Commonwealth Electric Co.,* 241 Ill. 252. A number of other authorities are discussed, analyzed and applied. We think the question whether the violation of the statute contributed to cause plaintiff's injury was for the jury. *Wintersteen v. National Cooperage Co.,* 361 Ill. 95.

In that case the court in discussing "proximate cause" said: "It is difficult to write a general rule by reason of the complex and diversified circumstances arising daily in the modern industrial and business world defining a situation in which the causal connection is broken so as to release the party guilty of negligence in the first instance from liability for the injury suffered by another. It may be stated as a general rule that in order to render the party liable for his negligent act such act must be so related to the injury as to be the proximate cause thereof. The intervention of independent, concurrent or intervening forces will not break the causal connection if the intervention of such independent force was itself probable and foreseeable. (*Sullivan v. Ohlhaver Co.* 291 Ill. 359; *Miller v. Kelly Coal Co.* 239 id. 626.) . . . Such issue was a question for the jury. (*Illinois Southern Railway Co. v. Hamill,* 226 Ill. 88.)"

In the instant case there is evidence to the effect that the driver of the truck knew there were often children in the alley where he parked the truck; he knew defendant's instructions were to remove the key and put the control levers in neutral position when leaving a truck. This was some evidence from which the jury might find that defendant knew children might meddle with the mechanism of trucks resulting in injury. We think the legislature had this situation in mind when they enacted § 92 above quoted. *Stine v. Union Elec. Co.*, 305 Ill. App. 37. In that case defendant had parked his car within 20 feet of a crosswalk at an intersection contrary to the provisions of par. 187, § 90, ch. 95½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 85.219], of which the section involved in the instant case is a part of the same chapter. In that case Stine was struck by an automobile driven by a third person whom plaintiff could not see approaching due to defendant's parked car. Par. 187 provides: "No person shall stop, stand, or park a vehicle, . . . in any of the following places: . . . within 20 feet of a crosswalk at an intersection." Defendant contended that the parking of its truck was not the proximate cause of plaintiff's injury but resulted from the act of a third party in driving the automobile which struck and injured plaintiff. But the Appellate Court overruled this contention and said: "The statute in question prescribed a duty for the protection and safety of persons and property,—the safety of pedestrians and those riding in vehicles. The accident that happened was one of the very things from which the imposition of this duty was designed to protect plaintiff and other persons." See also *Elgin A. & S. Tr. Co. v. Wilson*, 217 Ill. 47; *Maggiore v. Laundry & Dry Cleaning Service* (La. App.), 150 So. 394.

(2) Was Jacklin acting outside of the scope of his employment at the time he parked the car and went to his home for lunch as above stated? We think the question was clearly one for the jury. *Wagner v.*

*Chicago Motor Coach Co.,* 288 Ill. App. 402; *Kavale v. Morton Salt Co.,* 242 Ill. App. 205; *Bloodgood v. Whitney,* 235 N. Y. 110; *Moore v. Rosenmond,* 238 N. Y. 356; *Radatz v. Tribune Co.* 293, Ill. App. 315. Jacklin finished his deliveries about 1 P. M. and was given an hour for lunch; there was no restaurant within the territory he served; it was only a few blocks from where he made his last delivery to his home and while it was not on a direct route we are clear that in any view of the law it cannot be said he had deviated so far from his work as to render his employer not liable for any negligence he may have committed. He went to his home for lunch, told his older son to go to the truck parked in the rear of his home to get the route book so he could make up the daily report while at lunch as was his custom.

(3) Was plaintiff guilty of contributory negligence? Plaintiff was a few months more than 14 years old at the time of the accident and lived in the neighborhood. He knew the Jacklin boys; rode his bicycle in the alley and talked to the boys who were in the truck manipulating some of the buttons to see which controlled the lights. At their request he went in front of the truck, then rode around to the back to see if the rear lights went on when the boys touched certain buttons. We think the question whether he was in the exercise of due care for his own safety, under the circumstances, was clearly for the jury.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT and McSURELY, JJ., concur.