Cecilia M. Malloy, administratrix, *vs.* Simon Newman.

Suffolk.    January 6, 1939. — November 24, 1941.

Present: Field, C.J., Donahue, Qua, Dolan, Cox, & Ronan, JJ.

*Proximate Cause. Motor Vehicle,* Permitting to remain on highway, Registration. *Negligence,* Violation of law, Motor vehicle, Use of way. *Way,* Public: trespass.

Negligent conduct of the owner of an unregistered automobile in permitting it, in violation of G. L. (Ter. Ed.) c. 90, § 9, to remain parked upon a public way, with its doors unlocked and the key in the ignition switch, although he knew that "there were many thefts of automobiles and that it was dangerous to leave an automobile unlocked and unguarded," might properly be found to have been the proximate cause of the death of a police officer who, several miles from the place of such parking, was run down by one who had stolen the automobile while so parked and, not in the course of escape or pursuit but nearly two hours after the theft, was driving down a hill on a city street at a reckless speed. Qua & Cox, JJ., dissenting.

Tort. Writ in the Municipal Court of the Brighton District of the City of Boston dated February 25, 1935.

On removal to the Superior Court, the case was tried before *Walsh,* J.

The case was argued at the sitting of this court in January, 1939, before *Field,* C.J., *Donahue, Qua,* & *Cox,* JJ., and afterwards was submitted on briefs to all the Justices except *Lummus,* J.

*J. E. Hannigan, (F. G. Lichtenstein* with him,) for the plaintiff.

*C. C. Petersen,* (*John J. Sullivan* with him,) for the defendant.

DONAHUE, J. The plaintiff's intestate, a police officer of the city of Boston, while acting in the course of his duty on a public highway on June 4, 1934, was struck and killed by an automobile owned by the defendant.

The case was tried before a jury in the Superior Court on a declaration containing six counts. At the close of the evidence introduced by the plaintiff the defendant rested. The judge in compliance with a motion filed by the defendant directed a verdict for him on each count. The judge reported his action for the determination of this court with a stipulation of the parties that, if there was no error in the direction of the verdicts for the defendant, the verdicts should stand, but that, if there was error in the direction of a verdict for the defendant on any count in the declaration, a new trial should be had on such count.

1. The plaintiff administratrix here seeks to recover damages for the death of her intestate under the section of the death statutes that provides that "a person who by his negligence or by his wilful, wanton or reckless act, or by the negligence or wilful, wanton or reckless act of his agents or servants while engaged in his business, causes the death of a person in the exercise of due care, who is not in his employment or service, shall be liable in damages . . . ." G. L. (Ter. Ed.) c. 229, § 5. The statute does not include liability for a death caused by a "nuisance." Liability is imposed only for "negligence" or for a "wilful, wanton or reckless act." The operator of the defendant's automobile at the time it caused the death of the plaintiff's intestate was not an agent or servant of the defendant. The evidence did not warrant a finding that the defendant committed a "wilful, wanton or reckless" act. The plaintiff can recover in this action only if a finding is warranted that negligence of the defendant contributed to cause the death of her intestate.

2. The jury was warranted in finding the following facts. The defendant had lived in Rhode Island for over thirty years. He purchased the automobile in question in Feb-

ruary, 1934, and registered it in Rhode Island. It was not registered in Massachusetts and no permit for its operation here was issued by the registrar of motor vehicles. (G. L. [Ter. Ed.] c. 90.) The defendant was unmarried and kept a room in Rhode Island which he occupied when in that State. Since 1930 he had owned seven apartment houses in the Allston district of the city of Boston, and since the spring of 1933 he had kept a room for his exclusive use in one of those buildings, which he occupied when he was in this Commonwealth. A large amount of repair work was done in his Allston apartment houses in April and May, 1934. During a period from the last of March to the end of May in 1934 the defendant came to Allston each week on Monday and stayed there until Saturday. During that period he operated his automobile on highways of this Commonwealth for a total of more than thirty days.

Though the registration of the defendant's automobile in Rhode Island gave his address as Woonsocket and he in fact resided in North Smithfield in that State, we assume for the purposes of this case that the registration was valid under the law of Rhode Island. (See Rhode Island P. L., 1929, c. 1433, § 2; *Ewell* v. *Cardinal*, 53 R. I. 469, 471; *Marquis* v. *Messier*, 39 R. I. 563, 564, 565.) By reason of such registration, the defendant's automobile could lawfully be operated on Massachusetts highways within a period of thirty days, reckoned from the day when it first entered this Commonwealth in the year 1934, or from the day of his acquisition of a place of abode or business here, whichever day was the earlier. (G. L. [Ter. Ed.] c. 90, § 3, as amended by St. 1933, c. 188. [See now, however, St. 1939, c. 325.] *Van Dresser* v. *Firlings*, 305 Mass. 51, 55.) There was evidence warranting a finding that the period during which the defendant's automobile could lawfully be operated on the ways of this Commonwealth — solely by virtue of its Rhode Island registration — had expired some time before the day when its operation caused the death of the plaintiff's intestate.

Although the defendant's automobile was registered in Rhode Island, it could not have been lawfully operated on

the ways of this Commonwealth beyond the thirty-day period above mentioned without registration here unless, first, the defendant maintained in full force a policy of liability insurance providing indemnity against loss by reason of the liability to pay damages to others for bodily injury or death caused by the defendant's automobile, and, second, the defendant or the operator of the automobile, "while operating the same during such additional time, has on his person or in the vehicle in some easily accessible place a permit issued by the registrar which then authorizes the operation of such vehicle without registration under this chapter." G. L. (Ter. Ed.) c. 90, § 3, as amended by St. 1933, c. 188. See *Conningford* v. *Cote*, 308 Mass. 472, 474. The defendant admitted that no such permit had been issued by the registrar. It follows that the defendant's automobile could not lawfully be operated or permitted to remain upon a Massachusetts highway on the day when the plaintiff's intestate was killed. G. L. (Ter. Ed.) c. 90, § 9.

3. There is nothing in the record to indicate that there was any negligent act done by the defendant after his automobile was stolen. We are here concerned with the conduct of the defendant on the evening of June 4, 1934, prior to the time of the theft. A question here to be determined is whether there was evidence to warrant a finding of negligence on the part of the defendant. In addition to the evidence earlier related there was evidence warranting the finding of the following facts. The defendant, at about eight o'clock in the evening of June 4, drove his automobile to one of his apartment houses in Allston and left it unattended on the public highway in front of the house. When he left it the doors of the automobile were not locked and the key, by means of which the engine could be started, was in the ignition switch. The defendant testified that he knew "there were many thefts of automobiles and that it was dangerous to leave an automobile unlocked and unguarded." Within one half to three quarters of an hour after the defendant left his automobile he returned to the place where he had left it. He found it was gone. It

had been stolen. In less than two hours after the theft,[1] the automobile was being operated by Hart, the thief, at a rate of speed of over eighty miles an hour on a public highway in the Charlestown district of the city of Boston where it struck and killed the plaintiff's intestate, who, it could have been found, was in the exercise of due care. The automobile was equipped with means to prevent its being "set in motion by unauthorized persons . . . contrary to the will of the owner" as required by G. L. (Ter. Ed.) c. 90, § 7. The defendant did not use those means when he left his automobile unattended on the highway.

Our registration statutes in force at the time of the death of the plaintiff's intestate contained prohibitions with respect to motor vehicles that are upon a public way without proper registration (or without a permit issued by the registrar of motor vehicles when such a permit is required by the statute). "No person shall operate . . ." such a vehicle upon a way — and "the owner . . . of such a vehicle shall not permit" its operation there — or "permit" it "to remain upon any way." G. L. (Ter. Ed.) c. 90, § 9. On the night when the plaintiff's intestate was killed the defendant violated the first and third of these prohibitions. We are here chiefly concerned with his violation of the statute in permitting his motor vehicle to remain upon a public way.

The language of the registration statute has consistently been interpreted in our decisions as expressing a definite public policy of the Legislature with respect to motor vehicles, not legally registered, when upon a public way. Since this interpretation was first made in *Dudley* v. *Northampton Street Railway*, 202 Mass. 443, the Legislature, though changing the statutes relating to motor vehicles in many particulars, has several times revised or codified the statutes on this subject and in so doing has reënacted without substantial change the statutory provision upon which this decision was primarily rested, and thus made this interpretation a part of the statute. *Potter* v. *Gilmore*, 282

---

[1] There was evidence that the theft occurred shortly after 8 P.M. and that the plaintiff's intestate was struck at about 10 P.M. — REPORTER.

Mass. 49, 54, and statutes therein cited. See also *Kelly* v. *Morrison*, 231 Mass. 574, 577; *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, 330; *Dolan* v. *Commonwealth*, 304 Mass. 325, 332–333. It is held that the statute was intended to safeguard travellers rightly using the highways from the risk of injury by a motor vehicle not properly registered, to put such a vehicle "outside the pale of travellers," to give it, when on a highway, the status of a trespasser and not that of a traveller and to make the mere presence of such a motor vehicle upon a highway at any time or place unlawful — and the conduct of one operating such a motor vehicle on a public way or permitting it to remain there is "permeated in every part by his disobedience of the law." *Dudley* v. *Northampton Street Railway*, 202 Mass. 443, 448. *Chase* v. *New York Central & Hudson River Railroad*, 208 Mass. 137, 158. *Bourne* v. *Whitman*, 209 Mass. 155, 172. *Holden* v. *McGillicuddy*, 215 Mass. 563, 565, 566. *Potter* v. *Gilmore, supra.* The statute dealing with the subject of the registration of motor vehicles imposes a criminal penalty for its violation. G. L. (Ter. Ed.) c. 90, § 20. A consequence of the violation of any statute imposing a criminal liability is that such violation is evidence of negligence of the violator "as to all consequences that the statute was intended to prevent." *Baggs* v. *Hirschfield*, 293 Mass. 1, 3.

In the present case, the defendant, on the evening of June 4, 1934, by operating his inadequately registered motor vehicle upon a public way, and also by permitting it "to remain" upon a public way, violated the registration statute, G. L. (Ter. Ed.) c. 90, § 9. In order to fix a civil liability for negligence on the defendant it was not necessary to find that his unregistered motor vehicle caused harm which a properly registered motor vehicle under the same conditions would not have caused. The defendant's act in permitting his unregistered motor vehicle to remain upon a public way was evidence of negligence on his part. The defendant created a danger to travellers on a public highway even though the precise manner or place in which the danger would arise could not have been foretold. It could

not properly have been ruled that there was not evidence of negligence of the defendant.

4. It remains to be considered whether there was evidence to warrant a finding of causal relation between the negligence of the defendant and the death of the plaintiff's intestate.

The last negligent act of the defendant preceding the accident was his permitting his motor vehicle which was not legally registered to remain upon a public highway. Such negligence did not cease to be operative when he left the vehicle on the street in violation of the prohibition of the statute. While he was absent he still continued to "permit" his motor vehicle "to remain" upon a way, in violation of the statute. G. L. (Ter. Ed.) c. 90, § 9. There was evidence of negligence on the part of the thief, Hart, because he operated an inadequately registered motor vehicle on a way, and also because of the manner in which he operated it at the time it struck the plaintiff's intestate. The intervening negligence of Hart which contributed to the accident did not necessarily break the causal connection between the negligent conduct of the defendant and an injury occurring to a traveller on the highway while his motor vehicle was being operated by Hart. In order to find the defendant liable it was not necessary that he should have foreseen that his negligent conduct would be followed by the negligence of another in the operation of the vehicle.

The "intervening negligence of a third person, which contributes to an injury, does not necessarily break the causal connection between the conduct of an earlier wrongdoer and the injury. A causal connection may nevertheless be found, either on the theory of *Burke* v. *Hodge*, 217 Mass. 182, that the negligence of the earlier wrongdoer remained a dangerous force until the negligence of the later wrongdoer concurred and combined with it to cause injury, or on the theory of *Lane* v. *Atlantic Works*, 111 Mass. 136 . . . that the earlier wrongdoer ought to have foreseen that his negligence would be followed by negligence of another resulting in injury . . . ." *Morrison* v. *Medaglia*, 287 Mass. 46, 49. *Leahy* v. *Standard Oil Co. of New York*, 224 Mass.

352, 361. See also *Teasdale* v. *Beacon Oil Co.* 266 Mass. 25, 28; *Wallace* v. *Ludwig,* 292 Mass. 251, 254, 255; *Leveillee* v. *Wright,* 300 Mass. 382, 389; *Camp* v. *Rex Inc.* 304 Mass. 484, 488; *Farewell* v. *Interstate Busses Corp.* 307 Mass. 553, 556.

The present case comes within the doctrine of the case of *Burke* v. *Hodge.* A causal connection would exist if the negligence of the defendant in permitting his unregistered motor vehicle to remain upon a highway was an active, operative force when the motor vehicle, driven by the thief, collided with the plaintiff's intestate. It could not be ruled as matter of law that there was not here such a causal connection. A finding was warranted that the negligence of the defendant in permitting his unregistered motor vehicle to remain upon a public way had not ceased to be operative when the vehicle was taken and operated by Hart and when it collided with the plaintiff's intestate.

The defendant places reliance on the opinion in the case of *Slater* v. *T. C. Baker Co.* 261 Mass. 424. There, as in the present case, a motor vehicle left by its owner, unlocked and unattended, on a public way, was stolen and, while it was being operated thereon by the thief, it struck and injured a pedestrian. But, unlike the present case, there was no question as to registration, and no evidence that the defendant's officers or agents knew that thefts of automobiles were frequent, or that it was "dangerous to leave an automobile unlocked and unguarded" on a public way. The only conduct of the defendant which was there before the court in determining whether or not the defendant was negligent was that the defendant left a motor vehicle — which was registered — unlocked and unguarded, upon a public way. The conclusion there reached was that the theft of the motor vehicle and its operation by the thief on a public way were not acts that the defendant was bound to anticipate. In the present case there was evidence of negligent conduct on the part of the defendant which was not present in the *Slater* case. Here it appeared that the defendant's motor vehicle was not registered as the statute required. A consequence of the conduct of the defendant

in permitting his unregistered motor vehicle to remain upon a public way was that the violation of the registration statute was evidence of the defendant's negligence. In order to find the defendant liable it was not necessary that the defendant should have anticipated the wrongful conduct of Hart. It was enough for the plaintiff to show that the harm done to the plaintiff's intestate was due to the combined effect of the wrongdoing of the defendant and that of Hart. *Burke* v. *Hodge*, 217 Mass. 182, 184.

The case should have been submitted to the jury on the sixth count in the declaration which alleges, among other things, negligence of the defendant. In accordance with the stipulation of the parties appearing in the report of the judge, there must be a new trial on the sixth count of the declaration.

*So ordered.*


Justices Qua and Cox are of opinion that the evidence would not warrant a finding that the death of the plaintiff's intestate was proximately caused by any act or omission of the defendant.

The evidence of the circumstances of the death upon which the plaintiff is obliged to rely in order to prove her case came in part from the thief himself and in part from a police officer who was an eye witness. The thief testified that while he was driving the stolen automobile down Bunker Hill Street in the Charlestown district, which is several miles from the place of the theft, at the rate of eighty-two miles an hour he saw Officer Malloy, the deceased, "leave the sidewalk with a spiked mat which he was throwing across the street"; that he (the thief) tried to get between Officer Malloy and the sidewalk and to avoid striking Malloy, but that the right mudguard hit and killed him. The police officer testified that he and Malloy had been detailed "to watch for speeders on Bunker Hill Street" and had taken with them a "spiked carpet," and that the automobile came down "at a very fast rate of speed" "on the left hand side of the street, went over to the right side . . . headed direct for Malloy," who had swung the "spiked

carpet" in the street, and carried him one hundred twenty-six feet. Whichever of these witnesses the jury might have believed, and whether they might have believed that the thief hit the deceased accidentally or intentionally, or however little of the evidence they might have accepted, it seems plain that they could not have found that the defendant's automobile was involved in the death of the plaintiff's intestate without at the same time finding that the death resulted from the act of the thief in driving in a city street at an unreasonably high rate of speed in defiance of efforts of the police to stop him. There was no evidence that what happened in Charlestown occurred in the course of escape and pursuit from the place of the original theft. In fact the thief testified that he first took the automobile to Somerville and left it there and later returned and drove it to Charlestown. When Malloy was killed the thief was using the automobile in a reckless if not wanton manner for purposes having no immediate relation to the theft.

The opinion of the majority of the court permits the jury to find that Malloy's death was proximately caused by the negligence of the defendant in merely leaving his unregistered automobile unlocked with the key in the switch in a part of the city distant from the scene of the killing. We are unwilling to extend the principle of legal causation so far as this. Even if the theft in itself could be found to have been a consequence of the defendant's neglect, it would not follow that the defendant would be liable for all damage that the thief might afterwards do with the stolen property. If the independent act of a third party can ever break causal connection the acts of the thief in this instance would seem to have been of a type most potent to that end. In our opinion the case falls within the American Law Institute's Restatement of Torts, § 447, comment g, in that the conduct of the intervening third person was "so reckless as to make it appear an extraordinary response to the situation created by the actor and therefore a superseding cause of the other's harm." At the scene of the accident the acts of the thief were wholly

dominant and any prior negligence of the defendant had faded to insignificance as a causal factor.

Moreover, we think that this case is governed by the authority of *Slater* v. *T. C. Baker Co.* 261 Mass. 424. In that case an employee of the owner of an automobile left it in the street unlocked, with the key in the lock, and with the "ratchet brake" not fully set. While so left the automobile was feloniously appropriated and so negligently driven by the wrongdoer that one plaintiff was injured and the intestate of the other plaintiff was killed. This court, while seemingly conceding that negligence of the defendant could be found from the manner in which its automobile had been left, held that "the larceny of the automobile and its use by the thief were intervening independent acts which the defendant was not bound to anticipate and to guard against," and that the causal connection between the defendant's negligence and the subsequent injuries was broken by the larceny of the automobile and its use by the thief. The only difference of substance between that case and the present case is that in that case it did not appear, as it appears here, that the automobile was unregistered. We do not believe that a distinction in the matter of cause should be founded upon this difference. The state of being unregistered is more an abstract conception than it is a fact in nature. As a causal element it is inherently weak. It had little if any bearing upon the operation of the human and physical forces which were in complete control at the time and place of the accident. It is difficult to see how the opportunity presented to the thief and his acceptance of it and his later conduct were affected at all by lack of registration, but if the state of authority in this Commonwealth is such that lack of registration must, in general, go to the jury as evidence of negligence, still we think that the chain of causal connection between the defendant's negligence and the death of the plaintiff's intestate is not so strengthened thereby as no longer to be broken by such intervening acts of a wrongdoer as were held to break the connection in the *Slater* case. The actual conduct of the defendant in leaving his automobile unlocked in the street was the same

in both cases, and in neither case did he do anything after that.

Inasmuch as the majority do not overrule the *Slater* case, it would seem that their opinion would be the same if the defendant had left his automobile properly locked, so that the case would depend entirely upon lack of registration. This court has gone very far in attaching legal consequences to the operation of an unregistered automobile. We think it unfortunate to extend those consequences into a new field to which we foresee no logical limits in place or time. Nearly all of the decisions which we have seen upon similar facts in other jurisdictions support the *Slater* case. *Squires* v. *Brooks*, 44 App. D. C. 320. *Castay* v. *Katz & Besthoff, Ltd.* 148 So. 76 (La. 1933). *Kennedy* v. *Hedberg*, 159 Minn. 76. *Rhad* v. *Duquesne Light Co.* 255 Penn. St. 409. Compare *Weiss* v. *King*, 151 So. 681 (La. 1934).

In our opinion the verdicts for the defendant directed by the court should stand.