Sven Ostergard, Appellee, v. Harry Frisch, Appellant.

Gen. No. 44,160.

Opinion filed February 16, 1948. Released for publication March 2, 1948.

CLARENCE S. PIGGOTT, of Chicago, for appellant.

ROBERT C. RANSOM, of Oak Park, for appellee.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Defendant appeals from a judgment of $173.34 in favor of plaintiff for damage to plaintiff's automobile. The case was tried without a jury.

The amount of the claim is small, but the principle of law involved is of far-reaching importance. The case was tried upon a stipulation of facts, which discloses that on March 18, 1946, about 10 o'clock in the forenoon, defendant drove his automobile to a place of business located at 2460 North Pulaski Road in Chicago, where he stopped his car and parked it. He left his automobile unlocked and the key in the ignition. After calling on his customer, he came out and found his automobile missing. It had been stolen,

and the thief, while later driving it, collided with plaintiff's automobile on Belden avenue in Chicago between the 3400 and 3500 block, where plaintiff's automobile was parked.

The sworn statement of defense filed to the claim of plaintiff admitted that on March 18, 1946, the defendant parked his car at the stated address, and when he returned for his car found it had been stolen and driven away by a thief; that said thief "then" drove the defendant's said automobile over various streets in said City of Chicago unknown to the defendant; that said thief drove defendant's automobile along and upon West Belden avenue between the blocks 3400 and 3500 in said city, and "then and there" had a collision with defendant's automobile and the plaintiff's automobile.

We fix the place of the accident as approximately 6½ city blocks from the place where the car was stolen, by taking judicial notice of the general ordinances of the City of Chicago, ch. 51, par. 48a, § 1, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 107.122]. It appears from the map made a part of the Chicago zoning ordinance and from the ordinance appearing in ch. 30, § 4 of the Municipal Code, 1939, that North Pulaski Road is a north and south street 4000 west, while Belden avenue is an east and west street between 2300 and 2400 north. The block numbers included in the stipulation of facts and the map referred to establish the distance mentioned between the place of theft and the place of accident. The close proximity of the place of accident to the place of theft, and the fair inference to be drawn from the stipulation of facts together with the admission in the quoted portion of defendant's sworn statement of defense, convince us that the accident happened during the flight of the thief from the scene of the theft.

Defendant has not suggested or argued upon this appeal that the accident did not occur during the flight

of the thief. His position here is based entirely upon
the ground that the tortious act of the thief was the
independent, intervening, direct and proximate cause
of the accident and not the alleged violation of the
statute; that the statute did not intend to make the
owner of a car liable for the tortious act of a thief.

The right to recover is predicated upon the viola-
tion of § 92 (a), par. 189, ch. 95½, Ill. Rev. Stat. 1947
[Jones Ill. Stats. Ann. 85.221, subpar. (a)], the perti-
nent provision of which is:

"No person driving or in charge of a motor vehicle
shall permit it to stand unattended without first stop-
ping the engine, locking the ignition and removing
the key, . . ."

The precise question here presented has not here-
tofore been decided in this State so far as our search
discloses, and no reported case in this State has been
cited by counsel, except *Moran v. Borden Co.,* 309 Ill.
App. 391. We find a conflict of authority upon this
question in the various jurisdictions, and in Massa-
chusetts the decisions of the Supreme Court upon this
question are, in our opinion, irreconcilable.

*Moran v. Borden Co.* involved a violation of this
statute, but it did not involve the act of a thief driving
off with the car. The injury resulted from tampering
with the car by children, who had been loitering around
the automobile and whom the driver of the car had
seen and should have known were likely to meddle
with his car. He left the car unattended in the alley,
with the key in the ignition, and while absent, one of
the children succeeded in setting the car in motion,
injuring one of the other children. This court, in
speaking of proximate cause, at page 394 quoted from
*Wintersteen v. National Cooperage & Woodenware
Co.,* 361 Ill. 95:

"The intervention of independent, concurrent or inter-
vening forces will not break the causal connection if

the intervention of such independent force was itself probable and foreseeable.''

In *Elgin, A. & S. Traction Co. v. Wilson,* 217 Ill. 47, a switchman left a switch unlocked, and it was opened by a trespasser, which brought about the collision. The court at page 52 said:

''That a collision was caused by the tortious act of a stranger could have no effect to relieve the common carrier from responsibility to an injured passenger, if the failure of the carrier to do that which human foresight and forethought would have suggested presented the *opportunity* for the commission of the tortious act.'' (Italics ours.)

In *City of Joliet v. Shufeldt,* 144 Ill. 403, it was said the court deduced from the authorities the general doctrine is that it was not a defense to an action for injuries occurring by reason of the negligent act of the defendant, that the negligence of a third person, or an inevitable accident, or that an inanimate thing contributed to cause the injury to the plaintiff, if the negligence of the defendant was an efficient cause, without which the injury would not have occurred. To the same effect, *Lotesto v. Baker,* 246 Ill. App. 425.

*Ross v. Hartman,* U. S. C. C. A., 139 F. (2d) 14, (certiorari denied by the Supreme Court, 321 U. S. 790), is directly in point. In that case an ordinance similar to our statute was violated. The driver of the car, an employee of appellee, parked it upon a public street, leaving the key in the ignition. Another stole the car and, while driving it, injured the plaintiff. The same defense was interposed as here. The court said:

''Violation of an ordinance intended to promote safety is negligence. If by creating the hazard which the ordinance was intended to avoid it brings about the harm which the ordinance was intended to prevent, it is a legal cause of the harm. This comes only to say-

ing that in such circumstances the law has no reason to ignore and does not ignore the causal relation which obviously exists in fact. The law has excellent reason to recognize it, since it is the very relation which the makers of the ordinance anticipated. . . . *The evident purpose of requiring motor vehicles to be locked is not to prevent theft for the sake of owners or the police, but to promote the safety of the public in the streets.* An unlocked motor vehicle creates little more risk of theft than an unlocked bicycle, or for that matter an unlocked house, but it creates much more risk that meddling by children, thieves, or others will result in injuries to the public. The ordinance is intended to prevent such consequences. Since it is a safety measure, its violation was negligence. *This negligence created the hazard and thereby brought about the harm which the ordinance was intended to prevent.* It was therefore a legal or 'proximate' cause of the harm. . . . *The fact that the intermeddler's conduct was itself a proximate cause of the harm, and was probably criminal, is immaterial.* . . . The rule we are adopting tends to make the streets safer by discouraging the hazardous conduct which the ordinance forbids. It puts the burden of the risk, as far as may be, upon those who create it. Appellee's agent created a risk which was both obvious and prohibited. Since appellee was responsible for the risk, it is fairer to hold him responsible for the harm than to deny a remedy to the innocent victim.'' (Italics ours.)

The *Ross* case expressly overruled its decision made 27 years previously in *Squires v. Brooks,* 44 App. D. C. 320. The court said of *Squires v. Brooks:*

''We cannot reconcile that decision with facts which have become clearer and principles which have become better established than they were in 1916, and we think it should be overruled.''

The same court in *Shaff v. Claxton,* 144 F. (2d) 532, followed its reasoning in *Ross v. Hartman,* even though it did not involve a violation of the ordinance, since the owner did not park the car upon the public street, in violation of the ordinance, but parked it in a parking lot next to a restaurant, with the key in the ignition. A stranger drove off with the truck and injured plaintiff. It was held that even without the ordinance it was a question of fact for the jury as to whether the negligence of defendant, combined with that of the thief, under such circumstances, was the proximate cause of the accident.

The Supreme Court of Massachusetts in *Malloy v. Newman,* 310 Mass. 269, sustained the right to recover under circumstances where the owner of the car, in violation of the registration statute of Massachusetts, illegally drove and then parked his car on one of the public streets of Boston, leaving the car unlocked, with the key in the ignition. A thief drove off the car and killed a pedestrian. The same defense was there raised that the violation of the statute was not the proximate cause of the accident, but the independent, intervening act of the thief was the direct and proximate cause. In disposing of this contention, the court said:

"A consequence of the violation of any statute imposing a criminal liability is that such violation is evidence of negligence of the violator *'as to all consequences that the statute was intended to prevent.'* " (Italics ours.)

At page 275 the court said:

"The intervening negligence of Hart [the thief] which contributed to the accident did not necessarily break the causal connection between the negligent conduct of the defendant and an injury occurring to a traveller on the highway while his motor vehicle was being operated by Hart. In order to find the defendant liable it

was not necessary that he should have foreseen that his negligent conduct would be followed by the negligence of another in the operation of the vehicle.

The 'intervening negligence of a third person, which contributes to an injury, does not necessarily break the causal connection between the conduct of an earlier wrongdoer and the injury. A causal connection may nevertheless be found, either on the theory of *Burke v. Hodge,* 217 Mass. 182, that the negligence of the earlier wrongdoer remained a dangerous force until the negligence of the later wrongdoer concurred and combined with it to cause injury, or on the theory of *Lane v. Atlantic Works,* 111 Mass. 136 . . . that the earlier wrongdoer ought to have foreseen that his negligence would be followed by negligence of another resulting in injury. . . .' *Morrison v. Medaglia,* 287 Mass. 46, 49; *Leahy v. Standard Oil Co. of New York,* 224 Mass. 352, 361.''

The court in that case distinguished *Slater v. T. C. Baker,* 261 Mass. 424, and in effect overruled it, yet the same court in *Sullivan v. Griffin,* 318 Mass. 359, four years later, without any attempt to distinguish *Malloy v. Newman,* and only referring to it as a case involving an unregistered automobile, squarely overruled *Malloy v. Newman.* In the *Sullivan* case it is said that *Malloy v. Newman* did not overrule *Slater v. T. C. Baker.* With this statement we cannot agree. In our judgment, a study of the two cases convinces us that *Malloy v. Newman* in effect does overrule *Slater v. T. C. Baker.* Thus may be observed the conflict of decisions in the Supreme Court of Massachusetts on this question.

*Castay v. Katz & Besthoff,* 148 So. 76 (La. App.), denied a recovery in a case where no violation of any ordinance or statute was shown to be involved, and held that when a motor vehicle, left unattended, was stolen, that the negligence of the defendant, under

the circumstances, was not the proximate cause of the accident but that intervening act of the thief was the proximate cause.

In *Maggiore v. Laundry & Dry Cleaning Service*, 150 So. 394 (La. App.), the same court of Louisiana, where the alleged negligence was predicated upon a violation of the ordinance requiring the withdrawal of the key from the switch when the electric-driven vehicle was left unattended, and where the plaintiff, and a friend of his to help him, undertook to move the electric delivery truck and thereby started its power, resulting in injury to plaintiff, said:

"It cannot be said that there was no causal connection between the fact that the key was left in place and the fact that later the motor started. A violation of a statute enacted for the safety of life or limb necessarily has the relationship of cause to effect where the final effect is such as could not have occurred had the statute not been violated."

Our statute in relation to the regulation of traffic is entitled (par. 98) a "Uniform Act Regulating Traffic on Highways," approved July 9, 1935. It is a comprehensive act of which the quoted portion, § 92a, is a part. A reading of the entire act leads to but one conclusion. It is designed in the main to protect the public safety. Paragraph 118, § 21, of the act provides, unless otherwise declared in the act, that "it is a misdemeanor for any person to do any act forbidden or fail to perform any act required in this Act." Paragraph 234, § 137, of the act provides various penalties for such misdemeanors, which would include a violation of the quoted portion of § 92a. Paragraph 388a of ch. 38, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 37.335], makes the stealing of a motor vehicle a felony, with imprisonment in the penitentiary of not less than one year and no more than twenty years.

If the legislature intended that the public safety be protected against the tampering with or

stealing of a motor vehicle, and the possible reckless driving of such cars, to prevent which, so far as possible, they require the owner of the car when leaving it unattended to lock the ignition and remove the key from the ignition or switch, then there is imposed upon the owner of the car a duty to reasonably foresee the consequence of his negligence, that being one of the tests of proximate cause. He should not be permitted to say that he could not reasonably foresee that by leaving the key in the ignition, one might tamper with or steal the car and become reckless in its operation, causing damage. Certainly the provision of the statute was not to protect the owner of the car against theft but was a safety measure intended to protect the public. *Ross v. Hartman; Moran v. Borden Co.* He is required by all rules of common sense and reason to know that a thief, in his effort to escape from the scene of the theft, may have no greater regard for traffic lights or traffic regulations than he had for the criminal statute making it a felony to steal the car. He must foresee that the thief who steals his car will not be concerned, when fleeing from the scene of the theft, about the rule of care and diligence in driving the car, which a driver is required under the law to exercise.

In construing the meaning of an act and the intent of the Legislature in enacting it, our Supreme Court has said in *Theo. B. Robertson Products Co., Inc. v. Nudelman,* 389 Ill. 281;

"We believe this to be the true intent of the General Assembly as indicated by the act itself and by the practice which is a matter of common knowledge, *as to which courts are not presumed to be more ignorant than other people.*" (Italics ours.)

No previous statutory provision required the owner of a horse-driven carriage or buggy, when left unattended on the public highway, to securely lock it against theft or movement by unauthorized persons. The danger to

the public safety was not so grave and imminent in the horse and buggy days as with the advent of the automobile, steadily increasing in number by the thousands. The courts must keep pace with scientific development and recognize the increasing hazards to the safety of the public. When considering present hazardous conditions confronting the public, against which the legislature aims to provide protection, courts should not rigidly adhere to a legal interpretation of proximate cause applied to conditions and circumstances prevailing many years ago, if to do so would do violence to the intention of the legislature. This is exactly what was observed in *Ross v. Hartman,* when they overruled the holding of that court made 27 years previously in *Squires v. Brooks.*

■ Proximate cause has been a fertile field for contrariety of opinion. In determining whether the negligence involved in the violation of the statute is the proximate cause of the resulting injury, *a statute may by its obvious intent enlarge upon the general definition of proximate cause.* As was so aptly said by the U. S. C. C. A. (7th Circuit), speaking through MR. JUSTICE EVANS, in *Eglsaer v. Scandrett,* 151 F. (2d) 562, in construing the provision of the Federal Employers' Liability Act:

"No phase of negligence law offers greater resistance to logical treatment than the much discussed question of proximate cause. . . .

. . . It is not strange that attempts to frame an accurate and comprehensive definition of the term 'proximate cause' have not been successful. It has been spoken of as an 'efficient' cause, as a cause 'without which the injury would not have occurred,' as a 'direct' or 'dominant' cause. . . .

Under the old concept of proximate cause, that cause must have been direct, the complete, the responsible, the efficient cause of the injury. Contributing and

remotely related causes were not sufficient. Now, if the negligence of the railroad has 'causal relation,'— if the injury or death resulted *'in part'* from defendants' negligence, there is liability.

The words 'in part' have enlarged the field or scope of proximate causes—in these railroad injury cases. These words suggest that there may be a plurality of causes, each of which is sufficient to permit a jury to assess a liability.''

The reasoning in *Ross v. Hartman, Shaff v. Claxton, Malloy v. Newman, Maggiore v. Laundry & Dry Cleaning Service,* and *Moran v. Borden Co.* is sound and should be followed.

The judgment of the municipal court is accordingly affirmed.

*Judgment affirmed.*

O'CONNOR, J., concurs.

NIEMEYER, P. J., dissents. The majority opinion is based on the assumption, not supported by the record, that the collision with plaintiff's car ''happened during the flight of the thief from the scene of the theft.'' Plaintiff never claimed that the thief was in flight when the collision occurred. In his statement of facts on appeal he says that defendant parked his car on March 18, 1946, about 10 o'clock in the forenoon, on a public street, leaving it unlocked and the key in the ignition; that it was stolen and, ''the thief, *after* having stolen appellant's said automobile and while *later* driving same, collided'' with plaintiff's automobile. (Italics ours.) The case is submitted on a stipulation of facts. The burden of proof is upon plaintiff and it was incumbent on him to see, so far as the facts permitted, that the stipulation contained every fact essential to his recovery. The record is silent as to the time between the theft of the car and the collision. It is also silent as to the direction in which the thief was

driving. Without this information we cannot infer from the fact that the collision occurred approximately three-quarters of a mile from the place of the theft that the thief was fleeing from the scene of his crime. The answer of the defendant, which was undoubtedly true, that "said thief or one John Doe then drove the defendant's said automobile over various streets in the said City of Chicago unknown to the defendant," gives no aid. The stipulation "that the thief, after having stolen defendant's said automobile and while later driving same collided with plaintiff's automobile," negatives the assumption that the collision occurred during flight from the scene of the theft. Had the assumption of the court been the fact, the stipulation would have been worded accordingly and resort to inferences would be unnecessary. So far as this record shows the thief at the time of the collision was driving the stolen car for purposes of his own, having no immediate relation to the theft or his flight from the scene of his crime.

The question presented is as to the liability of the owner of an automobile who leaves it parked on a public street with the key in the ignition and the doors unlocked, for damages caused by the negligent operation of the car by a thief not in flight from the scene of his crime. Plaintiff relies on section 92 (a) [Ill. Rev. Stat. 1947, ch. 95½, par. 189, subpar. (a); Jones Ill. Stats. Ann. 85.221, subpar. (a)] of "An Act in relation to the regulation of traffic," (UNIFORM ACT REGULATING TRAFFIC ON HIGHWAYS) as follows:

"No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition and removing the key, or when standing upon any perceptible grade without effectively setting the brake thereon and turning the front wheels to the curb or side of the highway."

This is a traffic regulation, not an anti-theft measure, and is designed to reduce the likelihood of parked cars being set in motion without the intervention of a human agency, or by children or other intermeddlers. The precautions required by the statute are those which in the absence of a statute the owner is required to take in the exercise of ordinary care when parking his car. They are reasonably effective in preventing the movement of the car from the place the owner had placed it. They are of little effect in reducing automobile thefts. The owner is not required to lock the doors or windows of the car, and the absence of the key in the ignition is only a momentary deterrent to the automobile thief working with the implements of his trade. A violation of the statute is *prima facie* evidence of negligence. *Johnson v. Pendergast,* 308 Ill. 255. To recover, plaintiff must establish a causal connection between the injuries complained of and the violation of the statute. 38 Am. Jur., Negligence, sec. 166. As said in *Kelly v. Davis,* 48 R. I. 94, 135 Atl. 602:

"In this connection, however, it may be said that it is not to be presumed without good reason that the Legislature intended to abrogate the general rule that there must be a causal relation between the violation of the statutory duty and the injury to render defendant liable and that such violation must be the proximate cause of the injury. Merely turning on the ignition switch would not set the automobile in motion. Other acts requiring some knowledge of the mechanical operation of this particular make of automobile were necessary to start it in motion."

5 Am. Jur., Automobiles, sec. 338, says: "Where the car is started by a third person, any negligence there may be on the part of the owner in leaving it unattended is regarded as not the proximate cause of the injury, and therefore, there is held to be no liability."

By far the greater number of cases based on alleged negligence in parking an automobile, whether arising under a statute or independent of a statute, are those in which the automobile has gotten loose without the intervention of a human agency and by force of gravity moves down an incline, or those in which the car has been set in motion by the acts of children following natural impulses and releasing brakes or starting the car by pressing buttons, shifting levers, turning keys, etc. Where the movement of cars has been caused by children whom the person leaving the automobile unattended has reason to believe might play around and on the car, such person, notwithstanding the general rule of nonliability for acts of third persons, is held liable for the resulting injuries. *Moran v. Borden Co.,* 309 Ill. App. 391; *Lomano v. Ideal Towel Supply Co.,* 51 A. (2d) 888 (N. J.); and *Lee v. Van Beuren New York Bill Posting Co.,* 190 App. Div. 742, 180 N. Y. S. 295; *Gumbrell v. Clausen Flanagan Brewery,* 199 App. Div. 778, 192 N. Y. S. 451, and *Connell v. Berland,* 223 App. Div. 234, 228 N. Y. S. 20, cited in *Ross v. Hartman,* 139 F. (2d) 14, relied upon in the majority opinion. *Contra,* where no reason to believe that the car might be tampered with by children. *Jackson v. Mills Baking Co.,* 221 Mich. 64; *Rhad v. Duquesne Light Co.,* 255 Pa. 409. The reason underlying these cases is, as stated in *Kennedy v. Hedberg,* 159 Minn. 76, 80, ''that it is a matter of common knowledge that boys are likely to experiment with the operation of any mechanism which can be set in motion, whereas it is unreasonable to suppose that a person who has reached years of discretion will do so.'' In that case the defendant had parked his car on a public street with the motor running and leaving Day, an adult, in the front seat; during defendant's absence Day drove the car upon the sidewalk, killing plaintiff's decedent. The case turned upon whether defendant's failure to stop the motor was the proximate cause of the fatal injury. The court said (p. 79):

"We have here a responsible human agency intervening between Hedberg's act and the injury. The fact that the motor was running simply eliminated one of the steps Day had to take to set the car in motion. Without his intervention the car would have remained where Hedberg left it. . . . If his act or omission only became injurious through some distinct wrongful act of another, the last act is the proximate cause and the injury will be imputed to it. . . . In a legal sense there was no causal connection between Hedberg's failure to stop the motor and the accident. His omission was merely an incident in the sequence of events which preceded the accident."

Cases involving injuries resulting from collision with cars driven by thieves who had taken them when negligently parked are comparatively few. By the greater weight of authority the criminal act of the thief in stealing the car, plus his tortious act in negligently operating it, and not the negligent parking of the car, is the proximate cause of the injury. *Slater v. T. C. Baker Co.*, 261 Mass. 424; *Sullivan v. Griffin*, 318 Mass. 359; *Castay v. Katz & Besthoff*, 148 So. 76 (La. App.); *Wilson v. Harrington*, 269 App. Div. 891, 56 N. Y. S. (2d) 157, affirmed 295 N. Y. 667. The only cases to the contrary coming to our attention are from the District of Columbia. *Ross v. Hartman*, 139 F. (2d) 14; *Schaff v. Claxton*, 144 F. (2d) 532, cited in the opinion of the court, and *Bullock v. Dahlstrom*, 46 A. (2d) 370 (Mun. Ct. App. D. of C.). The other cases relied upon by the majority of the court are *Malloy v. Newman*, 310 Mass. 269; *Maggiore v. Laundry & Dry Cleaning Service*, 150 So. 394 (La. App.), and *Moran v. Borden Co.*, 309 Ill. App. 391. Only *Malloy v. Newman* is a theft case. A divided court (two justices dissenting) held that the violation of the Massachusetts statute, making it unlawful for the owner of an unregistered motor vehicle to permit it to remain on or to be operated on a public street, required submission of

the case to the jury. The action of the owner in parking his car on a public street with the doors unlocked and the key in the ignition was ignored. The case of *Slater v. T. C. Baker Co., supra,* was distinguished but not overruled, the court saying (276, 277):

"There, as in the present case, a motor vehicle left by its owner, unlocked and unattended, on a public way, was stolen and, while it was being operated thereon by the thief, it struck and injured a pedestrian. But, unlike the present case, there was no question as to registration, and no evidence that the defendant's officers or agents knew that thefts of automobiles were frequent, or that it was 'dangerous to leave an automobile unlocked and unguarded' on a public way. The only conduct of the defendant which was there before the court in determining whether or not the defendant was negligent was that the defendant left a motor vehicle—which was registered—unlocked and unguarded, upon a public way. The conclusion there reached was that the theft of the motor vehicle and its operation by the thief on a public way were not acts that the defendant was bound to anticipate. In the present case there was evidence of negligent conduct on the part of the defendant which was not present in the *Slater* case. Here it appeared that the defendant's motor vehicle was not registered as the statute required. A consequence of the conduct of the defendant in permitting his unregistered motor vehicle to remain upon a public way was that the violation of the registration statute was evidence of the defendant's negligence."

*Slater v. T. C. Baker Co.,* was followed by a unanimous court in *Sullivan v. Griffin,* 318 Mass. 359 (1945). In that case the owner parked his car on a public way, leaving the window open and the key in the ignition in violation of the statute. Boys, stealing the car, drove around the neighborhood for an hour, parked the car about a mile from the place of the theft, and

two hours later again drove the car and injured plaintiff. The court said (361–362):

"The case at bar is governed by *Slater v. T. C. Baker Co.,* 261 Mass. 424, which was not overruled by *Malloy v. Newman,* 310 Mass. 269, a decision relating to an unregistered automobile. Nor is there any ground of distinction on the issue of proximate cause in the fact that in the *Slater* case the automobile was left where it might be seen by the defendant's employees. The plaintiff's contentions go far toward making the defendant an insurer as to the consequences of every accident in which his automobile might become involved while operated by the original thieves or their successors in possession. This is a course upon which, even if it were open, we decline to embark. See Am. Law Inst. Restatement: Torts, sec. 447, comment g."

In *Maggiore v. Laundry & Dry Cleaning Service, supra,* defendant violated an ordinance by leaving his electric truck in the street without removing the key and in parking so as to block ingress and egress of plaintiff's driveway; in order to drive into the street plaintiff and a friend, in attempting to move defendant's truck, shoved it about a foot when the motor started and the car moved forward, injuring plaintiff. On review the court held that the mechanism of the car had not been tampered with, that the car started as the result of a slight push given to it, that the car was in a defective condition and that plaintiff and his friend were justified in attempting to move it. In the opinion many cases are reviewed, including *Castay v. Katz & Besthoff, supra,* in which the defendant left a delivery truck standing on a public street with the motor running; it was taken by the thief, who drove it five or six blocks when he had a collision. The act of the thief was held to be the proximate cause of the damages sustained by plaintiff. In approving this holding, the court in the *Maggiore* case said (p. 397):

"Had the truck, without the unlawful, voluntary act of a third person, started of itself and injured some one nearby, we would, of course, have held that the act of the driver in leaving the truck with the motor running was the proximate cause, because that result should have been within the contemplation of any reasonably intelligent person. But it cannot be said that it is to be expected that a thief, or any other third party, will steal such an automobile and do damage with it."

*Moran v. Borden Co., supra,* arose under the section of the statute now under consideration. An electric milk truck was left standing in an alley without removing the plug or key; it was started in reverse by sons of the driver, who were trying various controls to determine which operated the lights; the boys were sent to the truck by the driver, who was in his home, and there was "evidence from which the jury might find that defendant knew children might meddle with the mechanism of the truck resulting in injury." In sustaining a judgment for plaintiff the court cited, among other cases, the *Maggiore* case, *supra.* The *Moran* case is in harmony with the great weight of authority where injury results from the tampering with parked cars by children, as heretofore stated, but has no applicability to the question of proximate cause of injury sustained by the negligent operation of a stolen car driven by a thief.

In the absence of special circumstances no recovery can be had for an injury resulting from the criminal act of a third person although there existed at the time a condition produced by the negligence of the defendant which made the criminal act possible or less difficult to accomplish. 38 Am. Jur., Negligence, sec. 71; *Bradshaw v. Edgar County Nat. Bank,* 130 Ill. App. 37; *Aune v. Oregon Trunk Ry.,* 151 Ore. 622, 51 P. (2d) 663; *Fraser v. Chicago, R. I. & P. Ry. Co.,* 101 Kan.

122; *Chancey v. Norfolk & W. Ry. Co.*, 174 N. C. 351. Consequently an intervening, wilful, malicious or criminal act of a third person is generally considered to be a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes a direct, immediate and proximate cause of the injury. Restatement of the Law, Torts, sec. 448, comment b; *Milostan v. City of Chicago*, 148 Ill. App. 650. Illustrative of special circumstances known to defendant which will render him liable for negligence, even though the criminal act of a third person intervenes, is *Neering v. Illinois Cent. R. Co.*, 383 Ill. 366, where the defendant permitted vagrants and vagabonds to congregate during the night on and around its railway station platform in an unprotected place, and was held liable for an assault upon one of its patrons. In the present case there is no evidence of any special fact or condition increasing the probability of the theft of defendant's car and the subsequent negligent conduct of the thief.

The judgment should be reversed.