59 So.2d 198 (1952)
FULCO et ux.
v.
CITY ICE SERVICE, Inc.
No. 7676.
Court of Appeal of Louisiana, Second Circuit.
June 29, 1951.
On Rehearing March 28, 1952.
Rehearing Denied June 2, 1952.
*199 Browne, Browne & Bodenheimer, Shreveport, for appellants.
Ferdinand A. Cashio, Shreveport, for appellees.
KENNON, Judge.
On December 16, 1948, an automobile driven by plaintiff, Roy L. Fulco, in which his wife and young daughter were passengers, was damaged in a collision with a truck owned by defendant, City Ice Service, Inc., and insured by defendant, Lumbermens Mutual Casualty Company. The petition recites that as the Fulco Dodge automobile was driven along its own side of Lawrence Street in the City of Shreveport at about 10:30 p. m., a truck of City Ice Service, Inc., without warning, in complete darkness and without any lights, darted from the curb where it had been parked, crossed over into its left side of Lawrence Street immediately in front of the Fulco vehicle, causing a head-on collision.
*200 Petitioners alleged, on information, that the truck in question had been parked by direction of the defendant ice company on Southern Avenue with the keys therein and unattended, and that a person whose name was unknown to petitioners got into the truck and drove it down to Lawrence Street and subsequently caused the accident first mentioned. Petitioners then alleged that they were uninformed as to whether or not the unknown person had the permission of the defendant company to use the truck, but alleged that he was an employee, was so authorized and was operating the truck with the knowledge and consent of its owner, express or implied.
In the alternative, and in the event the operator of the truck was not authorized to use it, then petitioners alleged that the conduct of the City Ice Service, Inc. in parking and leaving the truck in the nighttime unattended and with keys therein was an implied invitation, and that the action of the company in so leaving the vehicle with keys and unattended constituted negligence and was a proximate cause of the accident.
Alleging that the Lumbermens Mutual Casualty Company had issued a policy covering defendant and any one who might be operating the named vehicle against any negligent operation, plaintiffs, Mr. and Mrs. Roy L. Fulco, prayed for judgment against both defendants, in solido, for damages totaling $27,646.76.
Defendants filed exceptions of no cause or right of action and improper cumulation of actions which were overruled by the trial court and not urged on appeal.
The defendants in answer admitted that amicable demand had been made and that Lumbermens Mutual Casualty Company had issued a policy to its co-defendant, and set forth that if the truck involved in the accident was owned by defendant, it was being operated by a person unknown to defendants and without the permission, knowledge or consent of the defendant companies or their officers or employees, and that the truck was not parked on the street but on property owned by the defendant ice company.
On motion of plaintiffs, trial by jury was had and on May 10, 1949, a jury returned a verdict in favor of Mrs. Fulco and against Lumbermens Mutual Casualty Company for $1,000, and in favor of her husband, against the same company, for $691.76.
Motion for a new trial was filed on May 12th. On May 20th attorneys for plaintiffs moved for and obtained an order withdrawing as counsel. The motion for a new trial was granted. A new trial, lasting some five days, was held, resulting in a jury verdict in favor of plaintiff, Roy L. Fulco for $755.56, and a verdict for defendants as to the other plaintiff. The minutes of court show that the Court refused to sign a judgment in accordance with the verdict, and, on its own motion, ordered a new trial. Prior to the third trial, plaintiffs' second counsel was granted permission to withdraw as plaintiffs' attorney.
A third trial, also by jury, was held for four days beginning March 5, 1951, resulting this time in a judgment for plaintiff, Roy L. Fulco, against both defendants for $846.76 (the increase representing additional medical bills), and in favor of Mrs. Fulco against both defendants for $5,000. The case is before us on defendants' appeal from that judgment.
Plaintiffs have answered the appeal asking that the award in favor of Roy L. Fulco be increased to $1,500 and that the judgment in favor of Mrs. Fulco be increased to $10,000.
Plaintiff, Roy L. Fulco, testified that on December 16, 1948, while he was proceeding northerly on Lawrence Street in the City of Shreveport, Louisiana, defendant's truck suddenly, without lights, came into his path and struck his car head-on. He observed the name of the defendant ice company on the side of the truck, noted that the driver was a colored man but, due to the fact that his attention was directed to his injured wife, and that the truck, soon after the accident, backed up and got away from the scene, he did not observe the driver closely and could not identify him. A city police officer arrived at the scene as the truck was in the process of backing up, turning on the lights and starting off.
*201 He followed the truck to an alley off Southern Avenue near the premises of the defendant ice company. Finding that the driver had fled, this officer secured the keys and noted that the truck was a City Ice Service, Inc. truck.
No proof was offered to contradict Fulco's version of the accident. We find that the collision came as the result of the negligent operation of the City Ice Service, Inc. truck.
There is a stipulation in the record that the truck involved in the collision with plaintiffs was owned by the City Ice Service, Inc. and covered by policy of insurance issued by the co-defendant.
Plaintiffs in pleadings and brief have urged that the action of the defendant ice company in leaving its trucks unattended with the keys in the switches constituted negligence sufficient to make the company responsible for the torts committed by any person operating the trucks as a result of the invitation implied by their being left with the keys in the switches and unattended. In support of this contention, plaintiffs have cited and discussed the cases of Schaff v. R. W. Claxton, Inc., 79 U.S. App.D.C. 207, 144 F.2d 532, and Ross v. Hartman, 78 U.S.App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370. The holding of the Ross case is expressed in paragraphs three and four of the syllabus, quoted below:
"An ordinance requiring motor vehicles, left unattended in public place, to be locked is a safety measure, and its violation is negligence.
"Where truck owner's agent violated traffic ordinance by leaving truck unattended, in a public alley, with ignition unlocked and key in switch and an unknown person drove truck away and negligently ran over plaintiff, the violation of the ordinance was negligence and constituted the `proximate cause' of the injury rendering owner liable therefor."
The Court, in passing on the case, noted that in the absence of an ordinance, the leaving of a car unlocked might not be negligent in some circumstances, but in other circumstances it could be an act of negligence and therefore a proximate cause of a resulting accident. The Court then ruled that since the adoption of the ordinance was a safety measure designed to prevent children and thieves from tampering with an unlocked vehicle, and since this negligence created the hazard and brought about the harm which the ordinance was intended to prevent, it constituted a proximate cause and therefore the truck owner was responsible to the innocent victim.
Counsel also cites the case of Ostergard v. Frisch, 333 Ill.App. 359, 77 N.E.2d 537. In that case, the defendant left his automobile unlocked, with the key in the ignition while he called on a customer in a place of business in Chicago. The car was stolen and the thief, while driving it, collided with plaintiff's car. There the plaintiff relied upon an Illinois statute making it unlawful for a person in charge of a motor vehicle to leave it without locking the ignition.
Had a similar ordinance been here involved, the jury might well have held that defendant's action in leaving the key in the switch was a violation of law which contributed to the accident and that the defendants were liable. Such a holding would be in accordance with the recognized doctrine of this state that while a violation of a traffic ordinance is not negligence per se, nevertheless when the act of violation is the proximate contributing cause of an accident, liability results. Bradford v. Wertz, La.App., 52 So.2d 47, and cases there cited. However, no Louisiana law or Shreveport city ordinance was cited or introduced, and we find that the leaving of the keys in the trucks was not negligence under the circumstances.
The accident happened long after normal business hours. There is no proof that the driver was on any business of the ice company.
Having found that the ice company was not negligent in leaving the keys in the truck switch, and that the truck was not being used at the time in furtherance of the company's business, the judgment appealed from is erroneous insofar as the City Ice Service, Inc. is held liable.
*202 Liability against the insurance company turns on the question of whether or not the man driving the truck at the time was doing so with the express or implied permission of the City Ice Service, Inc. and therefore covered by the omnibus clause in the policy of insurance which included "any person while using an owned automobile * * *, provided the actual use of the automobile is with the permission of the named insured * * *."
Wade Anderson, a colored man, was arrested a few days after the collision, and on the testimony of Officer David C. Boddie was convicted in City Court as the driver of the City Ice Service, Inc. truck involved in the collision. No testimony was presented other than that of the police officer, who said he testified in City Court that he only saw the side of the face of the truck driver and that the side of Anderson's face resembled that of the truck driver. On cross-examination, he testified that his identification of Anderson was not positive. A few days after Anderson was convicted and began serving his sentence, this officer interceded with the city judge, who granted a suspension.
Wade Anderson testified that he was working for the City Ice Service, Inc. at the time of the trial, his job being on a truck belonging to a Mr. Pickett; that he had formerly worked for this company on a truck belonging to a Mr. Stewart. He denied any connection with defendant's truck on the night of the accident. He testified that defendant kept its trucks parked in the alley almost in front of the ice plant; that there was no one to check the trucks in or out and no watchman on duty, and that employees of the City Ice Service, Inc. used the trucks for personal trips as going after coffee and that "everyone who worked for them (the ice company) did the same thing." When asked whether he was driving defendant's truck on that night, he denied it, stating that he was at home and had been for some time before and afterwards and was in no position to sit in a truck due to the fact that he had acquired a blister by sitting on the top of a hot stove in a neighborhood restaurant in an effort to dry his wet clothing and suffered severe scald burns in the sitting-contact area. Anderson's story as to being burned in the strategic spot was corroborated by members of his own household.
During business hours of the day of the accident, the truck involved in the collision was driven for the City Ice Service, Inc. by its employee, Nemi Hudson, who left the truck parked across the street from the ice plant with the keys in it at 6:30 or 7:00 p. m. He testified that it had been his habit to so leave the truck during the two year period in which he had worked for the company.
Charlie Thomas, a fellow employee, testified that four trucks of the company were usually so parked across the street from the plant and, in answer to the question as to whether it was customary to leave the keys in these parked trucks, he testified that he always did.
H. T. Perry, in the employ of the City Ice Service, Inc., testified that the practice of parking the trucks across the street from the ice plant with the keys in them had been going on during the ten years he had been employed there.
Lee Atley, another employee of the ice company, who worked in the ice plant itself, testified that defendant's trucks were habitually parked across the street, and that on the night in question, he was relieved at his work by one Elijah Caldwell, who customarily worked from 6:00 p. m. to 6:00 a. m.; that the next morning when he returned to work, Elijah was not on duty but had left someone there in his place.
Elijah Caldwell, a City Ice Service, Inc. employee who worked normally from 6:00 p. m. to 6:00 a. m. each day and night, testified that the trucks were always kept on the other side of the street and that he didn't have anything to do with these trucks. From 10:00 p. m. to 6:00 a. m., Elijah Caldwell was in charge, working inside the plant and occasionally his duties brought him out on the dock. He denied that he had ever driven one of the trucks himself and when asked whether he did anything if he saw some one about to use a truck, he replied, "Yes, if I seed, I would ask, `Where you going?' or something like that." This testimony of defendant's employee indicates *203 that night use was made of the ice trucks. He explained his leaving his work on the night of the accident by testifying that he went home in response to a message from his wife that the baby was sick.
The accident occurred on Lawrence Street a short distance off of Texas Avenue. Plaintiffs' home was several blocks further down on the same street. Testimony was offered by plaintiffs which conclusively established that for several months prior to the time of the collision it was usual for a truck of the City Ice Service, Inc. to be parked, during the first half of each night, on Lawrence Street near where the accident occurred, which is in the immediate vicinity of a colored theatre, restaurant and drug store. Witnesses to this fact included the police officer on the beat, two employees of the Charity Hospital who habitually passed that way before and after changing shifts at 11:00 p. m., an employee of the colored theatre, and others who lived or had businesses in the neighborhood. One colored witness, a warehouse foreman for M. L. Bath Company, said that he often observed the City Ice Service truck as he was coming from the show at the Star Theatre. When questioned as to the location of the truck, he answered that the truck would "be sitting on Lawrence near Texas."
Our finding of fact is that the defendant, City Ice Service, Inc., had an open piece of ground across the street from its plant and bordering on the alley between this property and the plant; that for two to ten years prior to December 16, 1948, the practice had been for its employees in the late afternoon to leave the company trucks parked either in the alley or on the company's property adjacent thereto, with the keys in the switches. We further find that the trucks were not checked in or out with any one; that no employee was given the duty of watching the trucks and that no employee was habitually on duty outside the building after 10:00 p. m. We further find that there is ample evidence to support a conclusion by the jury that it was not unusual for night use to be made of these trucks in the neighborhood of the theatre and restaurant near where the accident took place. We therefore conclude that there is ample evidence in the record to support a finding that through indifference of the company over the years, an invitation (and implied permission) had been given to employees and others connected with the ice company and familiar with the situation to make use of defendant's trucks for personal purposes and errands in the vicinity.
The Louisiana jurisprudence on this point is discussed in the cases of Parks v. Hall, 189 La. 849, 181 So. 191; Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9, and Waits v. Indemnity Insurance Co. of North America, 215 La. 349, 40 So.2d 746, 748, all of which went from this Court to the Supreme Court of Louisiana on writs.
In the Parks case, the Supreme Court found that while the employee Hall did not have authority to use the car for his own purposes, nevertheless his employer never questioned Hall about the use of the car or complained about the time the car was brought back after having been washed and greased. There the Supreme Court of Louisiana noted that the authorities in jurisdictions other than Louisiana are divided in determining the extent of the liability of the insurer under the omnibus clause, and adopted the more liberal rule that the insurance is effective when consent to use the car is obtained in the first instance from the assured, regardless of the use to which the operator puts the vehicle while still in his possession. In support of its finding, the Court noted that the omnibus coverage clause gives protection to drivers other than the person named in the liability policy. In the case before us, the evidence justifies a conclusion that the use of the City Ice Service, Inc. truck at night by employees or other persons, such as the one responsible for the accident, was not unusual. While it is not clear that the operator was an employee of the ice company, the evidence leaves this question an open one and the jury would have been justified in reaching that conclusion. Certainly the evidence justifies the conclusion that defendant's truck at the time of the collision was being used in a manner that was in no way unusual and in fact was customary and in accordance with the practice which defendant had permitted for several years.
*204 Had there been no collision, doubtless the truck would have been returned in due course to its usual parking place and its absence would have received no comment or notice. Even after the accident happened, the driver drove the truck back to defendant's plant.
Having found that the evidence in the record is sufficient to support the finding of fact by the jury that the truck involved in the collision was being used with the implied permission of the assured, City Ice Service, Inc., whose policy of insurance contained the above quoted omnibus clause, the judgment in plaintiffs' favor as against the insurer, Lumbermens Mutual Casualty Company, is correct.
Dr. Paul Abramson testified that Mrs. Fulco had a laceration of the right knee, a fracture of the fifth metacarpal of the the right hand, and a compression fracture of the sixth cervical vertebra. He testified that Mrs. Fulco was in the hospital approximately a week or ten days, during which time her neck was placed in extension. For two or three months after she left the hospital she wore, both day and night, a prescribed neck and body brace. It was the opinion of Dr. Abramson and Dr. Gene D. Caldwell that Mrs. Fulco had fully recovered from the fracture at the time of the first trial in May, 1949.
One jury fixed her damages at $1,000, another at $5,000. We have concluded to accept the average of $3,000 as a fair award.
For the reasons assigned, the judgment in favor of plaintiffs, Roy L. Fulco and Mrs. Josephine Fulco, and against the defendant, City Ice Service, Inc., is reversed and set aside, and judgment is rendered in favor of the City Ice Service, Inc., and against all plaintiffs, rejecting their demands. The judgment in favor of Mrs. Josephine Fulco against the Lumbermens Mutual Casualty Company is reduced to $3,000 and, as amended, is affirmed, with costs. The judgment in favor of plaintiff, Roy L. Fulco, and against the Lumbermens Mutual Casualty Company is affirmed, with costs.
TALIAFERRO, Judge (dissents).
I respectfully dissent from the majority opinion.
It is not shown that an employee of the ice company was driving the truck at the time of the accident, and had it been so shown, the result would be the same. It is not shown that the company's trucks were used by its employees at night with its consent, express or implied. In fact, it is not shown that the company's officers knew that its trucks were being so used.
To bring the case within the "omnibus" clause, under the decisions cited, there must be a possession of the vehicle by the offending driver, in its incipiency, with the knowledge and/or consent of the owner. I do not find this to be the case here.

On Rehearing.
GLADNEY, Judge.
This rehearing was granted upon application of the appellant insurer who earnestly insists that we fell into error in holding that the operator of the offending truck was a permittee within the meaning and intent of the so-called omnibus clause of the insurance policy issued in favor of the City Ice Service, Inc., the insured and owner of the truck involved in the accident. Our former opinion comprehensively narrates the pertinent facts relating to the issues herein described and we see no reason for repetition. We have added only such details as seem necessary for purposes of clarification and modified such findings as conflict with the views expressed herein.
The liability of the insurer is, of course, circumscribed by the terms of its policy and in this instance liability may be said to arise only if the driver of the vehicle involved in the accident was in possession thereof through the express or implied permission of the insured. Thus, insurance coverage was extended to "* * * any person while using an owned automobile * * * provided the actual use of the automobile is with the permission of the named insured * * *."
Our original opinion affirmed a judgment against the insurance carrier with a finding that the operator of the truck owned by City Ice Service, Inc., and which admittedly was involved in the accident, had the implied permission of the insured to drive such truck. Our opinion resolved: that *205 the use of City Ice Service, Inc. trucks by its employees, or other persons was not unusual; that the question as to who was the driver of the involved truck was an open one, that is to say, one which the jury would be justified in concluding the driver was actually an employee of the insured; that the evidence justified a finding that the insured truck on the night of the accident was being used in a customary manner and in accord with established practice; and that the act of leaving the keys in unattended trucks, though parked on a privately owned lot, constituted an invitation or implied permission to anyone to use its trucks.
First, we examine the correctness of our finding there was "ample evidence to support a conclusion by the jury that it was not unusual for night use to be made of these trucks in the neighborhood of the theater and residences near where the accident took place." The evidence offers no contradiction that distribution of ice was made by trucks which were colored white and black and upon each of which was painted the words "City Ice Service", or that some twenty-five or thirty of these trucks were owned and operated by private individuals, many of whom were of the Negro race. These individuals purchased ice from the City Ice Service, Inc., and retailed it to their own customers. The City Ice Service, Inc., required the operator of such a truck to display his name near the words "City Ice Service". There were a number of other trucks similarly painted bearing the words "City Ice Service", which would not have the name of an individual thereon, and these trucks were owned, and were operated by employees of the City Ice Service, Inc., the insured, and were kept at or near one of its ice plants in Shreveport. The record does not make it clear as to how many of such trucks were actually owned and operated by the defendant ice company but there is testimony that at least four were usually parked on the private lot of the insured. Testimony to this effect was given by Nemi Hudson and Charlie Thomas, both employees of the insured.
Wade Anderson was the only witness to testify that employees of the insured were accustomed to use trucks from the parking lot upon personal missions, either at day or night. H. D. Hildebrandt, supervisor for the City Ice Service, Inc., said that personal use of their trucks was absolutely prohibited and he knew of no instance where any of the employees had been permitted to make personal use of the trucks. Charlie Thomas and Nemi Hudson, who said they were given exclusive custody and were in charge of operating the 1947 Chevrolet truck involved in the accident testified that such instructions were strictly observed. Wade Anderson was a colored employee of the insured during the month of May, 1948, only, which was approximately six months prior to the accident on December 16, 1948. His testimony was that it was customary and not unusual for employees of the City Ice Service, Inc. to use such trucks to go on personal missions of the driver. His testimony, however, does not make clear he was distinguishing those employees from the drivers of the trucks owned by the independent operators. During his examination as a witness he declared he was then (at the time of trial) working at the City Ice Service, Inc., and then admitted he was at work on a truck belonging to a Mr. Pickett. He was not employed by City Ice Service, Inc. after May, 1948. We think a fair inference from Anderson's testimony is that he was referring to trucks labeled "City Ice Service" and not specifically those operated and owned by the insured. Numerous witnesses called by plaintiffs testified a truck of the City Ice Service, Inc. was customarily parked on Lawrence Street near the scene of the accident at various times of the day or night. The substance of all of this testimony, with the single exception of that of Myrtis Brown, is that the identity of the driver or the ownership of the truck was unknown to the witness. Myrtis Brown testified that she recognized Elijah Caldwell standing near a white and black City Ice Service, Inc. truck on several occasions; that at first she did not know his identity but learned it from another person *206 later. She stated she did not recall who gave her this information, and only recalled it about a year later, in 1949, after she had talked to a Mr. Fulco. Caldwell denied he had ever driven any of the trucks and stated that he did not have permission to operate said trucks while he was in the employ of the City Ice Service, Inc. We find that the evidence on this point preponderates in favor of defendants and hold that the use of City Ice Service, Inc. trucks at night on personal missions of the employees was not permitted, and such use was not customary.
Our next objective is to examine the correctness of our previous resolution relating to the identity of the driver of the truck and whether the issue, as stated in our former decree, was an open one, that is, one in which the jury woud be justified in concluding that the driver of the offending truck was an employee of the City Ice Service, Inc. Mr. Fulco's identity of the driver was that he recognized him as a colored man, but his observation and testimony went no further. Likewise, Officer Boddie recognized the driver as being a Negro. It was upon the testimony of Boddie that Wade Anderson was convicted and sentenced to pay a fine and serve a jail sentence for leaving the scene of this accident. The officer was a witness in the City Court for the purpose of identifying the driver of the truck. He told the jury he testified in the City Court that Anderson looked like the Negro but he only saw one side of the driver's face and consequently did not positively identify Anderson as the driver of the truck. This police officer later interceded with the City Judge to obtain the suspension of Anderson's sentence. Anderson consistently denied that he was in any way involved in the accident.
The only employee of the City Ice Service, Inc. to whom any suspicion whatever attached was Elijah Caldwell. Plaintiffs persistently attempted to implicate Caldwell as the driver of the truck involved in this case. Caldwell testified that he worked at the ice plant in what is referred to as the vault or cold room, and on the platform attending to individual sales; that he was never permitted to drive any of the trucks and had never done so. He further testified that on the night of December 16, 1948, he began working about 6:00 o'clock p. m. and worked until about 2:30 o'clock a. m., when James Hall notified him of a telephone message from Elijah's wife requesting him to come home as the baby was sick; that in response to this call he walked home after giving Hall $2 to look after his job for the rest of the shift. Corroboration of his testimony was given by Caldwell's wife and James Hall. His testimony was disputed by Myrtis Brown, but only as above related, and the testimony of another witness, Ardis George, who stated that at some indefinite time in the past he had observed Elijah Caldwell driving one of the trucks of City Ice Service, Inc. The evidence against Caldwell as the operator of the truck on the night of December 16, 1948, cannot be said to be substantial, and not a scintilla of evidence was adduced that any other employee of the City Ice Service, Inc. was operating the offending truck on the night of the accident. Of course, the evidence plainly shows that Wade Anderson was not on that date in the employ of the insured, and irrespective of whether he was or was not the driver of said truck on the occasion of the accident, it is most illogical to infer the insured would have knowingly acquiesced in or by invitation would have sanctioned the use of one of its trucks on a personal mission by one who was not its employee. We, therefore, are not satisfied by the evidence in this case that the jury was justified in concluding the insured truck at the time of the collision was being operated by an employee of the ice company or was being used in a customary manner and in accord with an established practice.
The final point relates to the validity of our finding that the act of leaving ignition keys in unattended trucks parked on the privately owned lot constituted an invitation or implied permission to its employees or others to use such trucks on personal missions. In support of this view expressed in our former decree there were cited the cases of Parks v. Hall, 1938, 189 La. 849, 181 So. 191, 194; Stanley v. Cryer Drilling Company, 1948, 213 La. 980, 36 *207 So.2d 9, 12, and Waits v. Indemnity Insurance Company of North America, 1949, 215 La. 349, 40 So.2d 746, 748.
In Parks v. Hall, the decision of the Supreme Court was predicated upon permission given by the assured to Hall. In this connection the Court said: "We therefore conclude that the permission of the assured to Hall to use the car in the first instance, irrespective of the use to which he put the car while in his possession, was `permission of the assured' within the meaning and contemplation of the `omnibus clause' and the insurer is therefore liable to plaintiffs thereunder."
In Stanley v. Cryer Drilling Company, supra, the automobile covered by the policy was placed in the exclusive possession of the employee-driver involved. There the evidence disclosed the insured never instructed the employee that the truck was restricted to business purposes, although about a week after his employment the employee was instructed he could not haul anything in the truck for any one else because this use of the truck was not covered by the insurance. Robinson, the employee, used the truck for his own personal convenience. The policy there involved described the insured's automobile as "commercial" and defined the term "as use principally in the business occupation of the Named Insured * * * including occasional use for personal, pleasure, family and other business purposes." The Court then concluded that under the express terms of the policy it was contemplated by the parties that the use of this truck by Robinson would include his use of it for his personal covenience and family purposes.
In the Waits case, supra, the driver of the truck involved therein was authorized to use the truck to haul employees to the job and it was his responsibility to completely service the truck. The Court permitted plaintiff to recover when the truck was used for a personal mission of the employee, the Court stating: "In the present case, Selby had the initial permission of the insured to use the car and it was placed in his possession and under his control. He alone used the car. It was in his possession and under his control at the time he took it from the place where it was parked and at the time of the accident. Under such circumstances any instructions given Selby as to the use of the car or whether there had been a deviation from the instructions are immaterial and of no moment. This case comes clearly within the rule laid down in the Parks case."
It will be observed that in each of the above cases the Court expressly found that initial permission was granted by the insured. Such permission is totally absent in the instant case and cannot be inferred from any substantial evidence found in the record. Even should we assume, arguendo, the use of the truck by an employee of the insured, a closer case by way of analogy is that of Wilson v. Farnsworth, La.App., 1941, 4 So.2d 247, in which Farnsworth, a colored janitor, was employed with duties which required him to make use of one of his employer's motor vehicles, only for the purpose of mailing and receiving packages. The employee permitted the use of an assembly hall in its place of business for a dance, and the employee Farnsworth and a Negro girl were requested by the employer to render services in connection with the evening's entertainment. The dance was over about 3:30 in the morning and Farnsworth decided to take his coworker to her home and for such purpose he called a cab. When the cab did not arrive, Farnsworth went to the garage of his employer where he found an ignition key in the key lock of one of the trucks in which he proceeded to take his co-worker home. On this journey there occurred the accident complained of. In the suit that followed plaintiff's demands against the employer and the insured were rejected, the Court declaring that Farnsworth by making use of his employer's truck without the latter's permission was an interloper and his acts constituted a conversion of his employer's property violative of existing regulations. In concluding its opinion the Court held that at the time of the accident the truck of the named assured was operated without his knowledge, consent or permission, express or implied, thereby relieving the defendant, the insurer, of liability. To the same effect see Burglass *208 v. Burglass, La.App., 1940, 193 So. 275; Stephenson v. List Laundry & Dry Cleaners, Inc., 1936, 186 La. 11, 171 So. 556; Farnet v. De Cuers, La.App., 1940, 195 So. 797; Clemons v. Metropolitan Casualty Insurance Company, La.App., 1944, 18 So.2d 228; Cox v. Government Employees Insurance Company, 6 Cir., 126 F.2d 254; and Tulane Law Review, page 251.
From further review of the record before us, we are of the opinion that there was no substantial evidence presented to the jury to show permission, either express or implied, was accorded to the driver of the truck involved in the accident, and, in fact, there was no adequate proof as to whether the driver of the truck was an employee or thief. Certainly a preponderance of the evidence has overcome any presumption or inference which may have arisen from evidence tending to show a customary use of trucks of the insured for personal missions.
Our former decree, insofar as it affirms, as amended, the judgment in favor of Mrs. Josephone Fulco, plaintiff, against the Lumbermen's Mutual Casualty Company, defendant, and insofar as it affirms the judgment in favor of Roy L. Fulco, plaintiff, against the Lumbermen's Mutual Casualty Company, defendant, is avoided and set aside, and in all other respects our former decree is affirmed, re-instated and made the judgment of this Court.
The judgment appealed from is, therefore, annulled and reversed and plaintiffs' suit is dismissed at their costs, reserving to appellees herein the right to apply for a rehearing.
KENNON, J., not participating.
On Application for Rehearing.
PER CURIAM.
The right to apply for a rehearing herein was expressly reserved to plaintiffs-appellees in our former decree. In the application filed in pursuance thereof various assignments of error were made which we have carefully reviewed, but are still of mind that our former decree should be the final judgment of this court.
We note, however, that the jurisdiction of this court is attacked in this case for the first time when counsel in their brief submitted in support of the application for rehearing, urged "that in the light of the provisions of Acts of 1908, No. 51, Section 2, LSA-RS 13:4160, this court is without authority to set aside the verdict of the jury in this case and the trial court's judgment based thereon". Prior to reaching this court this suit was tried three times by a jury, the first two of which trials were set aside by the judge. The judgement in the third trial by jury was appealed to this court. It is this third jury verdict which counsel for appellees urges that this court is without authority to set aside. Act No. 51 of 1908, LSA-RS 13:4159, 13:4160, which forms the basis for counsel's contention, is quoted below in full:
"An Act in reference to trial by jury in civil cases.
"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That in any case where a jury has been prayed for by either party, and where the case has been tried twice by a jury without a verdict being reached, no further trial by jury shall be had, but the case shall be tried by the judge alone, the same as if no jury had been prayed for.
"Section 2. Be it further enacted, etc., That no judge shall have the right to set aside the verdict of a jury in the same case more than twice, but should there be three jury trials of the same case, the third verdict shall not be disturbed by the trial judge, who shall render judgment thereon without entertaining an application for a new trial."
After consideration of the entire act we are of the opinion that this statute was intended to have application only to trial courts and consequently the argument advanced is not in accord with our views. We do not think that the Legislature intended to deny the right of appeal to any of the parties to a suit wherein a third jury's verdict has been rendered, in view *209 of Articles 561 and 571 of the Code of Practice, and Article 7, Section 29 Louisiana Constitution of 1921.
For the reasons herein assigned, the application for rehearing is denied.